[Crim. No. 16725. Second Dist., Div. One. Mar. 18, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH CLEVELAND BRYANT, Defendant and Appellant.

564

## Counsel

Al Matthews, Arthur Garrett and Arthur Shivell for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**LILLIE, Acting P. J.**—Defendant was convicted of possession of heroin (§ 11500.5, Health & Saf. Code); he appeals from the judgment. Before trial he moved to suppress the evidence (§ 1538.5, Pen. Code); the motion was submitted on the transcript of the testimony taken at the preliminary hearing and denied. At the outset of the trial the judge refused to permit defendant to renew his motion (§ 1538.5 subd. (h), Pen. Code) but at the conclusion of the People's case defendant moved "to stike all exhibits" on the same ground—unlawful search and seizure; the motion was denied. Thus, on appellant's argument here that the arrest and search were unlawful, our examination of the evidence also includes, as it should, that taken at the trial. Only Officer McClain testified at the preliminary hearing and trial; defendant did not take the stand and offered no defense.

An unquestionably reliable[1] informant, previously known to them, talked to Officer McClain and his partner around 1:35 a.m. He told them that a man, Terry Gibson, a narcotic user, and a woman (Vera Fields), residing in an apartment at 842 East Colden, were selling heroin; that another person by the name of Little Joe or Joe Bryant (defendant) was staying there with them because of a quarrel with his wife; that Little Joe was a heroin user and seller and carried the "stash" either on himself or in his car; that defendant "carried a gun at all times with him"—while in his Buick Riviera he kept the gun and "stash" (heroin) underneath the glove compartment in a console between the bucket seats but while away from his car "he would carry the gun and the heroin on him"; that when outside of his vehicle Little Joe carried the gun in his waistband, at all times it was loaded and "[h]e [informer] had seen the actual gun"; and that Little Joe's car was a Buick Riviera "black over gold, black over tan." Twenty minutes later, around 1:55 a.m., Officer McClain drove the informer past 842 East Colden where the informer pointed out an Austin-Healey which he said was Terry Gibson's car; the informer did not see Little Joe's car and suggested "Why don't you drive around through the alley and we'll check. There is a parking facility for the apartment house at the rear of the apartment house and through an alley . . . drive through there and we'll see if his car is there"; at the rear in this facility, "a carport-type thing," they found "the vehicle [the informer] had descrbied as Joe Bryant's vehicle," and the informer said, "There's Little Joe's car," and "When you get him make sure you check underneath the glove box. That is where he keeps the stash and the gun, or he will have it with him." The vehicle was locked and they did not check the interior (after defendant's arrest his gun was found in the car; no heroin was found in the vehicle). They drove out of the alley onto Colden where the informant got out of the car and left on foot; Officer McClain then parked several doors from 842 East Colden and with his partner went to the apartment, effected forcible entry, arrested the occupants and searched the premises.

In addition to the foregoing the informant told Officer McClain that he personally knew the people—Terry Gibson, the woman (Vera) and Little Joe or Joe Bryant (defendant)—in the apartment, and upon arriving at the address pointed out to Officer McClain the apartment in which defendant was staying ("This was the apartment pointed out to me by the informant, yes"); that the people in "this" apartment had narcotics for sale—they "kept

---

[1]On prior occasions the informer had given information to Officer McClain which had led to seven arrests and five convictions; on these seven occasions narcotics were found at all locations given by this informant. The informant died the Saturday before the preliminary hearing. There is ample evidence to support the trial court's implied finding of reliability. (*People* v. *Aguilar,* 240 Cal.App.2d 502, 508 [49 Cal.Rptr. 584].)

it real close by the bedroom, and it was all heroin; they didn't have any-thing else . . ." (the only narcotic found in the apartment was heroin; it was found in the bed); that Little Joe "would be carrying the stuff [heroin]"; that the people in the apartment had guns and he had seen those guns himself (two rifles, one loaded, were found in the apartment) and he had seen "the actual gun" carried by defendant in his waistband and knew it to be loaded at all times. While the officer testified that the informer did not tell him he had been in the apartment,[2] he did not testify that the in-former told him he had not been there and it is apparent from the foregoing that he had; it is also apparent that the informer personally knew defendant, had seen him carry heroin on his person and knew defendant had heroin with him that morning.

For appellant's position that there existed no probable cause to arrest him, he cites *Aguilar* v. *Texas,* 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509] and *People* v. *Hamilton,* 71 Cal.2d 176 [77 Cal.Rptr. 785, 454 P.2d 681], to support the argument that the information possessed by Offi-cer McClain immediately prior to his entry into the apartment would not have enabled him to obtain a valid arrest warrant. It cannot be disputed that Officer McClain had no personal knowledge of defendant and his activities or of the other people in the apartment, thus any affidavit by him in support of an arrest warrant would have been based on hearsay, viz., the information given to him by the informant. Appellant says that this is insufficient because the officer's testimony fails to disclose the source of the informant's information; that Officer McClain did not expressly testify that the informant had personal knowledge that defendant had heroin in his possession.

"Following *Aguilar* [*Aguilar* v. *Texas* (1964) 378 U.S. 108 (12 L.Ed.2d 723, 84 S.Ct. 1509)], California courts have held that for an affidavit based on an informant's hearsay statement to be legally sufficient to support the issuance of a search warrant, two requirements must be met: (1) the affidavit must allege the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in such statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the inform-ant was credible or his information reliable. [Citations.]" (*People* v. *Hamil-ton,* 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681].) We

---

[2]"Q. Did this informant tell you that he had been in the apartment?
"A. [by Officer McClain] No."
Later, on cross-examination, Officer McClain was asked, "Q. Did you say that your informant had been in the building before?" and he answered, "No. He did not."

think it clear from the foreging testimony of Officer McClain that "the informant spoke with personal knowledge" of defendant's possession of heroin and that the source of his information that defendant carried the narcotic on his person when not in his car was the informant's personal observation. "In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." (*Spinelli* v. *United States*, 393 U.S. 410, 416 [21 L.Ed.2d 637, 644, 89 S.Ct. 584.) ■ Despite the lack of direct statement by Officer McClain that the informer had personal knowledge of defendant's possession of heroin, the danger of reliance on casual rumor is not here evident for the record establishes that the informant was reliable and that the incriminating facts concerning the contraband, its location and the criminal activities of defendant and the other occupants of the apartment were sufficiently described by him, detailed and accurate as to permit the inference of personal observation and that the informant had personal knowledge of defendant's possession of heroin. (*People* v. *Hamilton, supra,* 71 Cal.2d 176, 181-182.) There was probable cause and the arrest was lawful; a search incidental thereto is valid. (*Ker* v. *California,* 374 U.S. 23 [10 L.Ed.2d 726, 742-744, 83 S.Ct. 1623]; *People* v. *Cockrell,* 63 Cal.2d 659, 667 [47 Cal.Rptr. 788, 408 P.2d 116].)

About 2 a.m., without knocking or announcing their presence or their identities as police officers, his partner forced the apartment door open while Officer McClain ran in with gun in hand. They found defendant lying on a couch in the living room and Terry and Vera in bed in the bedroom. A plastic container of heroin belonging to Terry and Vera was found under the sheet in the bed down about three-quarters of the way where Officer McClain saw Vera "push her hand under the sheets, pushing down"; narcotic paraphernalia was found on the night table near the bed and oh top of the dresser. At the head of the couch on which defendant was lying were a stack of clothes and a hat; of them defendant said, "They are mine"; when the officer picked up his hat a piece of folded plastic containing heroin fell off the brim; there were numerous puncture marks on defendant's arms. Questioned about the marks defendant said he was just "chipping" and "didn't-have a habit"; of the heroin he told the officers "he bought three spoons from a friend that cost $75."

Appellant's claim that the entry constituted a violation of section 844, Penal Code, and is reversible error, is without substance. ■ Noncom-

pliance with section 844 may be excused in cases in which the officer before his entry possessed information which led him reasonably to believe that compliance would have increased his peril or frustrated the arrest. (*Duke v. Superior Court,* 1 Cal.3d 314, 323 [82 Cal.Rptr. 348, 461 P.2d 628]; *People v. Kanos,* 70 Cal.2d 381, 384-385 [74 Cal.Rptr. 902, 450 P.2d 278]; *People v. Rosales,* 68 Cal.2d 299, 305 [66 Cal.Rptr. 1, 437 P.2d 489]; *People v. Smith,* 63 Cal.2d 779, 797; [48 Cal.Rptr. 382, 409 P.2d 222]; *People v. Gilbert,* 63 Cal.2d 690, 706-707 [47 Cal.Rptr. 909, 408 P.2d 365]; *People v. Hammond,* 54 Cal.2d 846, 854 [9 Cal.Rptr. 233, 357 P.2d 289]; *People v. Carswell,* 51 Cal.2d 602, 607 [335 P.2d 99].)

The record establishes that Officer McClain acted on a good faith belief that compliance would increase his peril and place him in danger. He testified that they forced entry because "I had been told that the defendant Bryant would be carrying a gun . . . on his person"; "I had made a conclusion that if I had knocked on the door and announced my presence, that I might possibly be shot . . . ." The information given to him by the informant immediately before entry supports the reasonableness of that belief sufficient to excuse noncompliance with the statute.

Conceding that he did not press for the identity of the informer, appellant argues not that he would have been a material witness on the issue of guilt,[3] but generally that the refusal of the People to divulge "the facts relating to the informer, who was obviously an important witness, resulted in fundamental unfairness." One of those facts, he asserts, is what happened to the informant that morning. Officer McClain testified that when he drove out of the alley onto Colden the informant left the vehicle on foot; he explained, "I just let him out," and that he was not further interested in the informer that particular morning. However, it is clear from the record that the informant was not present at the time of either entry or arrest.

---

[3]Nor could appellant successfully do so for he had not only failed but had made no effort to demonstrate "a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant's exoneration." (*Honore v. Superior Court,* 70 Cal.App.2d 162, 168 [74 Cal.Rptr. 233, 449 P.2d 169]; *People v. Garcia,* 67 Cal.2d 830, 839-840 [64 Cal.Rptr. 110, 434 P.2d 366].) The informant was dead and no testimony could have been expected of him. Moreover, defendant neither offered a defense nor took the witness stand; he made no assertion that someone else brought the narcotic into the apartment and laid it on the brim of his hat, in fact he told the officers that he bought the heroin from a friend; he made no claim the informer was in the apartment, to the contrary throughout his brief he claims the record shows the informant had never been there (this is not truly what the evidence shows); he does not claim that the informer was present at the time of entry or at the time of arrest and he makes no suggestion of any possibility that the informant could give evidence on the issue of guilt. Appellant vaguely argues that the informant's testimony was material to establish probable cause and whether there was an illegal entry but he has not shown how knowledge of the deceased informant's name and the time, place and manner of his death might possibly assist him now.

Other facts appellant claims should have been disclosed by the People were the informant's identity and the manner, time and place of his death. As to the latter, the record shows that the prosecutor tried to establish this but was prevented by defendant. The officer testified that the informant died the Saturday before the preliminary hearing, then the following questions were asked and answered thusly:

"Q. [deputy district attorney] Do you know how he died?

"A. Yes.

"Q. How was that?

"A. Bullet wounds.

"Mr. Acosta [defense counsel] Your Honor, I object to the last two questions and two answers on the ground of immateriality," and the objection was sustained. As to identity, at the preliminary hearing the court asked Officer McClain, "In view of the demise of the informant do you still wish to maintain your privilege as a police officer in withholding his identity?" and the officer answered, "Yes, I do." Continuing, the deputy district attorney asked, "Is there some reason why you don't wish to reveal the name of your informant?" and the officer answered, "Yes"; asked, "Why is that?" the officer replied, "He has a family." The record establishes that defendant neither asked the officer the identity of the informant nor the court to require the officer to reveal his identity. At the preliminary hearing the court called this to defendant's attention but it is apparent that he did not want the informant's name.[4] Nor at the trial did defendant ask the identity of the informant. Finally, appellant claims that there should have been disclosure of actual cases in which the informant had been involved, but this goes to the issue of reliability which he has not here raised.

Based on his complaint that he was incarcerated continuously for 267 days, there were a number of delays in bringing the cause to trial, the case was continued over his objection on November 4, 1968, and his motion to dismiss for failure to prosecute within 60 days was denied on November

---

[4]"The Court: You didn't ask the officer what his identity was. You didn't ask the court to require the officer to divulge his identity, if you were interested. He said he wished to have the identity of the deceased informant remain secret; that doesn't mean that you can't ask him. Unless you ask him and he refused —

"Mr. Acosta [defense counsel]: Your Honor, we don't necessarily want the identity of the informer, if the informer is dead. We want his testimony.

"The Court: All right. You want the testimony because he is dead? Is that it?

"Mr. Acosta: No. I am saying that we are going to need his testimony to establish probable cause, to establish whether or not there was an illegal entry. We therefore move to suppress the evidence and to strike the testimony of the officer on these grounds."

6, 1968, appellant contends that the delay in bringing the cause to trial while being incarcerated at "unreasonable" bail was prejudicial.

■ The setting of bail is a matter within the trial court's discretion (§ 1272 subd. 3, Pen. Code) and no abuse thereof is manifest in a record that shows defendant's bail was set at $4,000 and then, only after he twice failed to appear, bail was forfeited and a bench warrant ordered and issued—April 22, 1968, and August 13, 1968.

■ Section 1382 subdivision 2, Penal Code, requires a dismissal unless good cause is shown why defendant is not brought to trial within 60 days after the filing of an information; when such an issue arises before trial, prejudice will be presumed from a defendant's right to a speedy trial unless the People successfully meet their burden of showing good cause for delay. (*People* v. *Wilson*, 60 Cal.2d 139, 151 [32 Cal.Rptr. 44, 383 P.2d 452].) ■ "Good cause" is established by a clear showing that the delay was the result of defendant's own acts. Here bail was twice forfeited because of defendants' failure to appear; he made six successful motions for continuance to permit him to obtain private counsel; when the public defender was appointed the plea was continued on defendan'ts own motion; at the request of codefendants the trial was continued from July 2, 1968, to August 13, 1968, with defendant's consent but on August 13, 1968, he failed to appear; later he made a motion under section 1538.5, Penal Code, and the hearing thereon was continued at his request; due to the absence of defense counsel the trial was continued to November 4, 1968; over his objection the trial on that day was continued to and commenced on November 7, 1968. ■ The cause trailed another matter, and the three-day delay was the result of a congested court calendar; this last continuance was for good cause and did not constitute an abuse of the trial court's discretion.

The judgment is affirmed.

Thompson, J., concurred.

**GUSTAFSON, J.**—I dissent.

Since an officer cannot make a warrantless arrest on less information than that which he would need to obtain an arrest warrant (*Wong Sun* v. *United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407], the crucial question is whether the information possessed by McClain immediately prior to the door of the apartment being kicked in would have enabled him to obtain a valid arrest warrant. Such a warrant could not properly have been issued if McClain's affidavit therefor did not "establish

that the informant spoke with personal knowledge" of the defendant's possession of heroin. (*People* v. *Hamilton* (1969) 71 Cal.2d 176 [77 Cal.Rptr. 785, 454 P.2d 681].)

Before making a warrantless search or a warrantless arrest on information supplied by an informant, an officer must have had described to him "the accused's criminal activity in sufficient detail that [the officer] may know that he is relying on something more substantial than a casual rumor circulating in the underworld. . . . ." (*Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584].)

The court concludes from what the informant told McClain "that the informer . . . had seen [defendant] carry heroin on his person and knew defendant had heroin with him that morning." I disagree. As I read the court's opinion, those conclusions are based upon the wholly unsupported assumption that the informant had been in the apartment. Even the Attorney General does not indulge in this assumption, but rather admits in his brief that the "informant told Officer McClain that he . . . had never been in the apartment."

With respect to the defendant here, the informant's only personal knowledge was that he knew the defendant and that he "had seen the actual gun" which defendant allegedly possessed.[1] Although this is stretching quite far, I am willing to infer that the informant saw the gun in the possession of the defendant. But I cannot conclude that because a person carries a gun, he also possesses narcotics.

I do not understand it to be the law that personal knowledge of the informant of a criminal act of defendant may be inferred from the fact that the information of the informant proves to be correct *after* what would otherwise have been an unlawful search has occurred. Here the officers, except as mentioned in the next paragraph, had not verified a single fact told to McClain by the informant before they kicked in the door. They did not know from any independent source or from their own knowledge who lived at the apartment or to whom the automobiles pointed out by the informant belonged.

*Spinelli* characterizes *Draper* v. *United States* (1959) 358 U.S. 307 [3 L.Ed.2d 327, 79 S.Ct. 329] as "a suitable benchmark" which, as I understand it, means the minimum amount of information which an officer must

---

[1] It is interesting to note that the significance of the gun was that the informant told McClain that defendant "would carry the gun" on his person when "he was away from his car." That proved to be incorrect because when defendant was arrested in the apartment, the gun was in the automobile.

possess before acting without a warrant. In *Draper* the informant told the officer that the defendant would disembark from a train on the 9th of September in Denver with heroin in his possession, gave the officer a detailed description of the defendant and of the clothes he would be wearing, said that the defendant would be carrying a tan zipper bag and said that the defendant would be walking fast. The officer was at the train station at the designated time when "he saw a man, having the exact physical attributes and wearing the precise clothing and carrying the tan zipper bag that [the informant] had described, alight from one of the very trains from the very place stated by [the informant] and start to walk at a 'fast' pace toward the station exit." Thus the officer "had personally verified every facet of the information given by him by [the informant] except whether [defendant] had accomplished his mission and had the three ounces of heroin on his person or in his bag." Because everything else told to the officer by the informant was verified by the officer *before* the arrest, the court concluded that the officer had reasonable ground "to believe that the remaining unverified bit of [the informant's] information—that [the defendant] would have the heroin with him—was likewise true." In the case at bench, the only information supplied by the informant which was verified by the officer before he acted was that a Buick Riviera would be parked near the apartment. The officer did not even verify that the automobile belonged to defendant. Surely the fact that an informant has correctly described an automobile which will be found near a house or an apartment does not afford the officer probable cause for believing whatever the informant tells the officer about the criminal activities of the occupants of the house or apartment. If this court's decision today is correct, a warrantless arrest or search is authorized when an officer verifies a very meager irrelevant and nonincriminating fact.

Since the California Supreme Court in *People* v. *Hamilton* (1969) 71 Cal.2d 176 [77 Cal.Rptr. 785, 454 P.2d 681] refused to infer personal knowledge of the informant on the basis of the affidavit in that case, I do not see how personal knowledge of the informant can be inferred from the testimony of the officer in the case at bench. Justice Mosk dissenting in *Hamilton* objected to requiring that "affidavits for warrants be drafted with the finesse of a Montgomery Street contract" because such affidavits "are prepared, generally hurriedly because of exigent circumstances, by laymen with limited legal background." That objection does not lie in the case of a warrantless arrest. If the informant has in fact told an officer that he has personal knowledge of a crime committed by a person whom the officer

then arrests, the prosecutor, presumably skilled in the law, can easily elicit this when examining the officer as a witness.

I think it was error to deny the motion to suppress the evidence and I would reverse the judgment.

Appellant's petition for a hearing by the Supreme Court was denied May 15, 1970. Peters, J., and Sullivan, J., were of the opinion that the petition should be granted.