[Crim. No. 6470. Fourth Dist., Div. Two. Oct. 28, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
JESUS PEREZ, Defendant and Appellant.

**COUNSEL**

John E. Mohoroski, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, and A. Wells Petersen, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**GARDNER, P. J.**—This case involves the issue of the use or the attempted use by the prosecution of prior or subsequent narcotics activity by the defendant to show his knowledge of the narcotic character of the substance involved in the primary charge. This issue presents itself rather frequently in trial courts but unfortunately has not been handled with complete consistency in the appellate courts. We will briefly review the authorities and attempt to set up some guidelines for trial courts in this troublesome area.

Defendant was convicted by a jury of sale of heroin.

An undercover agent was searched, given money and sent to the defendant's residence. He returned without the money but with two balloons. The undercover agent testified that when he went to the house the defendant answered the door. The undercover agent asked him if had "any stuff." The defendant said he did. The undercover agent then gave him the money and secured the balloons. An expert testified the balloons contained a usable amount of heroin.

Over objection, the prosecution presented evidence that six days later the defendant's home was searched pursuant to a search warrant. A substantial amount of heroin was found in the house and paraphernalia used for the injection of heroin was found on the defendant's person. It was also noted that the arms of the defendant bore "track" marks. After the defendant's arrest, he told the doctor at the jail he was undergoing withdrawal and that his heroin habit was costing him $120 a day.

In defense, two witnesses testified they were in the defendant's home the evening of the alleged sale and the undercover agent did not come to the home. The defendant testified the undercover agent did not come to his home and denied that he sold any heroin to the undercover agent. On cross-examination, he admitted he had narcotics paraphernalia in his pocket at the time of the search of the house. He further admitted knowledge of the acquisition and manner of the use of heroin.

On appeal, the defendant complains of the introduction into evidence, over objection, of the search of the defendant's house and the results of this search.

The general rule on similar offenses is fairly simple to state—although not necessarily easy to apply.

While evidence of other crimes is inadmissible when offered to prove criminal disposition or the propensity of the accused to commit a particular crime (*People* v. *Sam,* 71 Cal.2d 194 [77 Cal.Rptr. 804, 454 P.2d 700]),

such evidence is admissible when offered to prove such issues as motive, opportunity, intent, common design and plan, knowledge or identity. (Evid. Code, § 1101, subd. (b); *People* v. *Archerd*, 3 Cal.3d 615 [91 Cal.Rptr. 397, 477 P.2d 421].) However, before admitting such evidence for such a qualified purpose, it must be determined that the probative value of the evidence outweighs its inherent prejudicial nature. The proffered evidence must logically, naturally and by reasonable inference tend to prove the issue in dispute. It must be offered upon an issue that will ultimately prove to be material to the People's case and it must not merely be cumulative with respect to other evidence which the People may use to prove the same issue. (*People* v. *Perry*, 7 Cal.3d 756 [103 Cal.Rptr. 161, 499 P.2d 129]; *People* v. *Schader*, 71 Cal.2d 761 [80 Cal.Rptr. 1, 457 P.2d 841].)

Turning to the specific problem, the use of prior or subsequent narcotic activity to show knowledge, we will start with *People* v. *Gregg*, 266 Cal. App.2d 389 [71 Cal.Rptr. 920], merely because *Gregg* recognized two divergent lines of cases on this subject and discussed them in some detail.[1] First, there was a line of cases of which *People* v. *Tabb*, 137 Cal.App.2d 167 [289 P.2d 858], was typical which held generally that such evidence was admissible to show knowledge of the narcotic nature of the substance involved even though no real issue of knowledge was presented. On the other hand, there had developed a line of decisions of which *People* v. *Lapin*, 138 Cal.App.2d 251 [291 P.2d 575], was typical which found error in the admission of such evidence if there was lacking any real contention that the defendant did not know the substance in question was a narcotic. *Gregg* followed *Lapin* and held that the introduction of evidence of other narcotics activity sans any real contention of lack of knowledge was prejudicial error.

*People* v. *Anderson*, 6 Cal.App.3d 364 [85 Cal.Rptr. 669], also reversed in a similar situation holding that unless there appears to be some genuinely controverted issue as to knowledge, the evidence should be excluded. The court pointed out that ordinarily the fact that a narcotic is found in the personal effects of the defendant is compelling proof that defendant knew what he possessed and its nature.

*Anderson* was followed by *People* v. *Souza*, 11 Cal.App.3d 873 [90 Cal.Rptr. 54], which also reversed in a similar situation. The court pointed

---

[1]Prior to *Gregg*, it seems to have been fairly well established that if the defendant offers to stipulate that he knew the narcotic nature of the objects it would be error to admit such evidence. (*People* v. *Spencer*, 140 Cal.App.2d 97 [294 P.2d 997]) and that the trial court has the discretion to allow a defendant to admit his knowledge and thereby prevent the introduction of such evidence. (*People* v. *Gonzales*, 262 Cal. App.2d 286 [68 Cal.Rptr. 578].)

out that while such evidence was admissible, it should be limited to the issue of knowledge and not extended to extraneous matters designed to unfairly influence the jury.

At this point, the Supreme Court backed into the controversy, albeit innocently, in *People* v. *Archerd, supra,* 3 Cal.3d 615.[2] In *Archerd,* the court held that it was not error to admit evidence of some murders which had not been charged in an indictment charging murder. After repeating the general rule on similar offenses, the court stated: "There is no merit in the contention of defendant that until he puts in issue either identity, intent or other fact the People may not anticipate this and present evidence of other acts in their case in chief. *It is not necessary for the defendant to raise issues before the People may· meet them where this is part of the prosecution's burden.* The People have the burden of establishing intent and identity." (Italics added.) (*People* v. *Archerd, supra,* 3 Cal.3d 615, 639.)

It is the above quoted paragraph of *Archerd* which brings us to the most recent addition to this interesting bibliography. In *People* v. *Lawrence,* 25 Cal.App.3d 213 [101 Cal.Rptr. 671], evidence of activity in the narcotics traffic was admitted to prove knowledge and approved on appeal. In *Lawrence,* the court made the following observation: "*People* v. *Gregg* (1968) 266 Cal.App.2d 389 [71 Cal.Rptr. 920], *People* v. *Todd* (1969) 1 Cal.App.3d 547 [81 Cal.Rptr. 866],[3] and *People* v. *Anderson* (1970) 6 Cal.App.3d 364 [85 Cal.Rptr. 669], all of which are relied upon by defendant, support his argument that his knowledge and intent regarding the Sacramento crimes were not 'genuinely controverted' by his plea of not guilty, and that the Oakland evidence should have been excluded from the prosecution's case-in-chief. The *Gregg, Todd,* and *Anderson* cases, however, can no longer be considered authoritative in that respect in view of the holding in *People* v. *Archerd* (1970) 3 Cal.3d 615 [91 Cal.Rptr. 397, 477 P.2d 421]." (*People* v. *Lawrence, supra,* 25 Cal.App.3d 213, 220.)

We doubt that any blanket rule completely obliterating the rationale of *Gregg* and *Anderson* can or should be read into the above statement made in *Archerd.* The possibilities of mischief from any such holding are obvious. The statement in *Archerd* cannot be used as a device by which prosecutors have carte blanche in every narcotic prosecution to present

[2]The Supreme Court has not addressed itself directly to the point under discussion.

[3]*Todd* was a sex case and we are attempting to limit ourselves to the issue as presented in narcotics cases. *Todd* did observe that while the prosecutor must be ready to prove every element of the offense as part of his case in chief that ". . . it is not the law that he may introduce evidence of other offenses to support a part of his case which he has proved to the hilt. [Citing *Gregg.*]" (*People* v. *Todd, supra,* 1 Cal.App.3d 547, 553.)

evidence of prior or subsequent narcotic activity to show knowledge of the narcotic nature of the substance involved in the primary prosecution.

While the above brief foray into the wonders of the appellate process has not been particularly productive insofar as establishing any hard or fast rule on this subject, we conclude that some general guidelines in this field can be distilled for the guidance of trial judges and trial attorneys. ■ These are:

(1) The prosecution must prove every element of its case including the defendant's knowledge of the narcotic character of the substance involved.

(2) To prove this element, prior or subsequent narcotic activity on the part of the defendant is sometimes admissible.

(3) ■ The trial court has the discretion to allow the defendant to admit his knowledge of the narcotic nature of the object involved in the primary prosecution.

(4) If the defendant stipulates to such knowledge, it is error to admit evidence of other narcotics activity.

(5) There is no duty imposed on the trial court to *sua sponte* elicit a stipulation from the defendant as to his knowledge of the narcotic character of the substance involved.

(6) ■ It is not necessary for the defendant to raise this issue before the People can present such evidence.

(7) ■ However, before admitting any such evidence, the court must determine that the probative value of that evidence outweighs its inherent prejudicial effect and find that the evidence is not merely cumulative with respect to other evidence which the People have used to prove the same issue. Thus, if the evidence of the prosecution establishes the fact of knowledge in such a way that there is clearly no real issue presented the prejudicial effect of the evidence would outweigh its probative value and, in addition, would be cumulative. To borrow language from *Todd*, it would be an abuse of discretion to allow the introduction of such evidence if the prosecution has already proved this issue to the hilt.[4]

---

[4]An easy example of this rule would be to reverse the situation in the instant case and assume that the defendant is being prosecuted for possession of heroin based on the evidence secured during the service of the search warrant. The evidence of the prosecution would reveal that the defendant was fairly dripping with narcotics and it would be a naive juror indeed who would have any question in his mind as to the defendant's knowledge of the narcotic character of the drug. Twenty-three balloons of heroin were found in his house. Paraphernalia used for the preparation of heroin was found on his person. He had extensive "track" marks on his arm. Immediately afterwards he told a doctor he was undergoing withdrawal and said that he had a heroin

(8) If such evidence is admitted, it must be limited to establish the fact of knowledge and that fact alone. It may not be extended to extraneous matters designed to improperly influence the jury.

All of the above may appear to be a rather cumbersome effort to circumvent *Archerd* and return to the *Gregg* rule. To the contrary, we are, with full recognition of *Archerd*, attempting to bring the matter into proper focus, to avoid the establishment of any dogmatic or arbitrary rule and to re-recognize the proper test, i.e., the exercise of discretion by the trial court. If *Archerd* were taken literally, it could be argued that such evidence could be admitted at any time in any case. We have attempted to set forth certain guidelines and have pointed out that it is, as usual, the ultimate responsibility of the trial judge to exercise his discretion in each case. He must weigh probative value versus prejudicial effect based on the facts and circumstances of that particular case.

█ Applying the above rules to the instant case, we find that there was no abuse of discretion in admitting the questioned evidence.

This was a sale case depending on the testimony of an undercover agent. The defendant was not arrested at that time and thus there was no evidence of his possession of such an amount of narcotics as would necessarily indicate that the issue of knowledge was not controverted. Neither had the prosecution established defendant's knowledge of the narcotic nature of the material in the balloons which the undercover agent turned over to the officer. When the issue was presented, the defendant had ample opportunity to stipulate to his knowledge. This, he did not do. To the contrary, the usual stipulation to the testimony of the police chemist as to the fact that the substance acquired from the defendant was a narcotic was not forthcoming and that witness' testimony was presented. The evidence of the search was not remote. It was not inflammatory. It merely showed possession and use by the defendant of narcotics. This tended to show his knowledge of the narcotic nature of the substance sold to the undercover agent. At the time of the court's ruling, it was entirely possible that the contention would be made that the defendant did not know the nature of the substance he sold.

An additional ground exists for the receipt of this evidence in this case. Motive is always relevant in a criminal prosecution. It would not seem reasonable that the defendant could have acquired the extensive "track"

---

habit costing him $120 per day. Were the prosecution then to attempt to show the prior sale to prove knowledge, it would rather obviously be an abuse of discretion to allow this evidence in. Under these circumstances, the evidence of the prosecution had established the fact of knowledge in such a way that there was clearly no actual issue presented.

marks in the six days elapsing between sale and the observation of the marks. This would indicate the defendant had a habit. Evidence was adduced later that he had a rather sizeable monkey on his back—a $120 a day habit. Thus, the evidence was relevant as it shed light on his motive to sell heroin, i.e., to support his narcotic habit.

■ The defendant next contends that he was not adequately represented by counsel because of counsel's failure to object to testimony of the defendant on cross-examination relating to the defendant's knowledge of heroin and the tracks on his arm. However, failure of counsel to object does not indicate incompetency. The choice of when and where to object is a matter of trial tactics. The defendant had made a general denial of the crime charged and the permissible scope of cross-examination was wide. Counsel's decision to allow the testimony was clearly a matter of trial tactics. He was allowing his client to explain away evidence which he considered harmful to the defendant's case.

■ As a last contention, the defendant argues that he was compelled to be a witness against himself with respect to his cross-examination. This contention is without basis in fact or in law. He chose to take the witness stand and answered questions which were beyond the scope of his direct examination without objection. He waived his privilege against self-incrimination and the absence of any objection at the trial level was fatal to this contention. (See *People* v. *Wilson*, 254 Cal.App.2d 489 [62 Cal.Rptr. 240].)

Judgment affirmed.

Kerrigan, J., and Tamura, J., concurred.