THE PEOPLE OF THE TERRITORY OF GUAM
Plaintiff-Appellee

v.

ANTHONY M. SALAS
Defendant-Appellant

Criminal No. 78-0022A
District Court of Guam, Appellate Division
November 21, 1979

- - - - -

DUENAS and LAURETA, District Judges, and HEFNER, Designated Judge.

## AMENDED OPINION

PER CURIAM:

Appellant was found guilty of Unlawful, Unauthorized Delivery of a Controlled Substance (Heroin) on October 14, 1977. Judgment was entered against him on December 9, 1977, at which time he was sentenced to eight years in the Guam Penitentiary. On February 8, 1978 he was released on bail pending appeal.

The alleged delivery of heroin occurred on June 28, 1976. The indictment upon which he was convicted was brought on June 14, 1977. Appellant moved to dismiss the indictment on August 6, 1977, alleging that he had been denied due process of law and his right to a speedy trial because of the passage of more that eleven months between the alleged offense and his arrest and indictment. His motion was denied on October 14, 1977.

Appellant's case was called for trial on October 11, 1977. The jury was selected the same day. On October 14, 1977 Appellant moved for a mistrial on the ground that one of the selected jurors had been a member of the jury panel in prior criminal case[1] involving substantially similar issues, in which case the trial judge has stated his disagreement to the jury for their verdict of acquittal. Appellant's motion for dismissal was denied.

The case proceeded to trial. At trial the prosecution submitted evidence of criminal activity by Appellant other than that which he was charged, including delivery of heroin on

184

June 11, 1976 and a statement made by Appellant on June 13, 1977 relating to heroin dealings in which he was involved, not including the transaction of June 28, 1976. Defense counsel objected to the admission of the evidence, arguing that it was irrelevant and immaterial to the charge, that its probative value was outweighed by its prejudicial effect (citing People v. Perez, 42 Cal. App. 3d 760, 177 Cal. Rptr. 195 [1974], and that a comprehensive stipulation regarding Appellant's heroin addiction and familiarity with "the terms of drug transaction" had been entered into by counsel and read to the jury at the beginning of trial, thereby obviating the necessity for the submitted evidence. During the course of the trial, Appellant offered evidence of (1) a police report by an Officer Figgeroa to establish police bias and motive to fabricate charges against him, and (2) a laboratory report by a criminalist, Mrs. Osborne, who had died sometime prior to trial. With the latter report, Appellant intended to prove a break in the chain of custody of the substances allegedly seized from him by the inconsistency of Mrs. Osborne's findings with that of the government's witness, Chief Criminalist Frankie Ishizaki. The trial court denied the admission of both the police report and Mrs. Osborne's report.

Appellant was ultimately found guilty as charged.

Four grounds of error are raised on appeal.

I

The first assignment of error is that Appellant was denied due process of law and his right to a speedy trial by what characterizes as an unjustified delay between the alleged offense and his trial. Because he was not provided with notice of the charge for almost one year, Appellant maintains he had to contend with loss of memory and the inability to obtain witnesses in his behalf, and that, with the passage of time his ability to defend himself diminished while the government's case was conversely strengthened.

Appellant further urges that, on the facts of this case, the government has the burden of explaining the delay between the alleged offense and Appellant's arrest and indictment. However, Officer Figgeroa testified that he was working undercover at the time of the alleged offense and an early arrest would have blown his cover; and that he had other cases going on at the same time.

We disagree with Appellant's contentions on the basis of United States v. Lovasco, 97 S. Ct. 455 (1971).

In Lovasco, the defendant was indicted for committing federal criminal offenses more than 18 months after they allegedly occurred. Little additional information was developed beyond an investigative report made a month after the crimes

were committed. Claiming that the preindictment delay, during which material defense testimony had been lost, deprived him of due process, defendant moved to dismiss the indictment. The District Court granted the motion to dismiss and the Court of Appeals affirmed. The U.S. Supreme Court reversed, holding that it was error to dismiss the indictment. Citing Marion, supra, the Court ruled that the Speedy Trial Clause of the Sixth Amendment is applicable only after a person has been accused of a crime and that statutes of limitation provide the primary guarantee against bringing overly stale criminal charges. It was also stated in Lovasco that while the Due Process Clause has a limited role to play in protecting against oppressive delay, to prosecute a defendant following good faith investigative delay does not deprive him of due process even if his defense might have been somewhat prejudiced by the lapse of time.[1] The Court further stated that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied that they will be able to establish a suspect's guilt beyond a reasonable doubt. Nor is there a constitutional requirement that charges must be filed after there is sufficient evidence to prove such guilt but before the investigation is complete, the rationale being that an immediate arrest or indictment might impair the prosecutor's ability to continue the investigation or obtain additional indictments, and would pressure prosecutors into resolving doubtful cases in favor of early (and possible unwarranted) prosecutions, and further would preclude full consideration of the desirability of not prosecuting in particular cases.

The Court determined that it could not determine in the abstract the circumstances in which prosecution delay would require dismissing prosecutions, and left to the lower courts the task of applying "settled principles of due process."

In light of Lovasco, it is significant to note that the limitations period for the crime with which Appellant had been convicted is three years. (Guam Penal Code, §800). The "delay" complained of was less than one year and good faith investigative delay was shown in this case. This explanation is permissible under Lovasco.

Appellant argues that the Government did not justify the lapse of eleven months between the alleged transaction and the indictment. We find to the contrary. In Marion, supra, which involved a 38-month preindictment delay, the Court stated that the Due Process Clause may provide the basis for dismissing an indictment if the defense can demonstrate that the preindictment delay by the Government violated the Due Process Clause. It was pointed out in Marion that no actual prejudice to the conduct of the defense was alleged or proved, and there was no

186

showing that the Government intentionally delayed to gain some tactical advantage over the defendants or harass them:

> Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment. (Marion, supra at 466).

Marion thus appears to place the onus on the defense to prove prejudice stemming from prosecutorial delay. The case of Barker v. Wingo, 92 S. Ct. 2182 (1977) has held that there is no set formula or time limit in determining the prejudicial effect of delay, but rather that the test is one of balancing. In the case sub judice, the reasons for not making an immediate arrest and for the passage of eleven months before the indictment was brought against Appellee, do not constitute an unreasonable striking of the balance in favor of the Government. We therefore hold there is no merit to Appellant's claim that he was denied his rights to due process of law and a speedy trial because of prosecutorial delay.

II

Appellant next complains that the jury was prejudiced against him by comments made by the trial judge to an earlier jury panel which included a member of Appellant's jury panel.

On October 7, 1977 Lourdes T. Aguon was acquitted of a narcotics offense. She was accused of delivering heroin to an undercover agent. After the verdict was read the defendant was told to leave the courtroom, and both counsel for the defense and the prosecution left as well. The trial judge then made the following comment to the jury:

> Ladies and gentlemen of the jury, while it is customarily not the function of the court to tell what the court thinks of the verdict, because it not my job, however as politely that I can tell you the Court does not agree with the verdict. This is my humble opinion and, of course, it is your function to judge the facts and I can tell you what the law is. But while we do this in very rare cases, I just wanted to convey my humble opinion that in this case we differed, but this is the jury system and we accept it as such and I certainly want to give you my thanks for the contribution you rendered in this case and in future cases. I'm sorry we took so late, but have a pleasant evening and good night.

187

On October 11, 1977, the jurors from the Aguon jury appeared with other jurors before the same trial judge for jury selection in the case now on appeal before this court, People v. Anthony M. Salas. The attorney for Appellant picked one juror that had been on the jury panel which had had their verdict commented on by the judge. The trial attorney did not know that the judge had expressed his opinion on the verdict in the other case until after the jury was impaneled.

At the first opportunity after hearing of the comment on the verdict in the prior case, the defense asked for a transcript and, upon receipt thereof, immediately moved for a mistrial. The motion was denied.

Appellant cites United States v. Kyle, 469 F. 2d 547 (D.C. Cir. 1972), cert. denied 93 S. Ct. 920 (1973) as authority that the motion for mistrial was erroneously denied. In Kyle three of the jurors in the defendant's case had two days earlier served on a jury in the case of United States v. Artis (citation omitted). After the jury returned a verdict of not guilty in Artis, it was subjected to the following statement by the trial judge:

> I just want to say this to the jury: Of course the jury has decided the question of guilt or innocence of this defendant. I don't think I deviated from this policy in the almost 13½ years I have been on the court. I have seen some surprising verdicts, frankly, but this beats anything I ever heard. And you members of the community who are always concerned about the crime situation, to return a verdict like this in this case, I must say, and the Assistant U.S. Attorney almost keeled over, I noticed, when the jury announced the verdict, I would be ashamed of this verdict. Thank you very much.
> (United State v. Kyle, supra at 548-549 citing United States v. Artis.)

The court in Kyle, while expressing its strong disapproval of the "acrimonious remarks" of the trial judge in Artis, noted the dissimilitude between the two cases, and found no error warranting the reversal of Kyle.

The differences between Artis and Kyle cited by the court on appeal included the fact that the defendant, both counsel, the witnesses, and most significantly the judges, were not the same, and that counsel for both the government and appellant carefully examined the jurors during voir dire for the possibility of prejudice. Each of the jurors had taken an oath, agreeing to return a verdict solely upon the evidence adduced during the course of the trial.

Using Kyle as our guide, we now turn to the question of whether the jury in Salas had been unduly prejudiced by the

comments made to the jury panel in Aguon. We begin with the premise that while it is appropriate for the court to thank jurors at the conclusion of a trial for their public service, such comments should not include praise or criticism of their verdict. ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury §5.6 (Approved Draft, 1968). Any inference by the court that the jury may have arrived at an incorrect verdict, whether or not done with an intent to influence the jury, has the potential of being highly prejudicial to a subsequent case which includes in its jury panel persons who were members of the panel whose verdict was commented upon by the trial judge. It is academic that the situation is exacerbated where the same type of case and the same trial judge are involved.

Salas is distinguishable from Kyle in that the offenses in the latter case were apparently different from those in its predecessor case, Artis, while in Salas the offense was substantially the same as that in Aguon. Further, the judge who addressed the jury on their verdict was the same judge who presided in Salas. His mere physical presence could well have served as a reminder to the two jurors, who in turn may have exerted an influence on their fellow jurors, that their verdict in Aguon was wrong and that the opportunity for a verdict of redemption was now before them.

On the other hand, the comment of the Salas judge, spoken without the invective of the trial judge in Kyle, also included the concession that the jury was the sole arbiter of guilt or innocence. Certainly this does not purge the judge's comments of all potential for influence. Nevertheless, it illustrates an important difference between the Salas judge's comments and the castigation delivered in Artis and cited in Kyle. Unlike the jury in Artis, the jury in Salas was reminded of its function as a sole finder of guilt or innocence of the accused and that it was not customary for the trial judge to openly interpose his opinion of the wisdom of the jury's verdict.

It can only be surmised what effect the trial judge's statement "I just wanted to convey my humble opinion that in this case we differed" may have had on the two jurors in Salas. We find, however, that it was qualitatively far removed from the phillipic "I have seen some surprising verdicts, frankly, but this beats anything I have ever heard," and the ensuing berating of the jury by the court in Artis. We also take cognizance of the extensive cautionary jury instructions in Salas regarding the duty of the jury to perform its duty without bias or prejudice.

189

We conclude, then, that while any comment on a jury's verdict, whether laudatory or unfavorable, is to be condemned, in the present case the comment by the trial judge did not reach the level of error warranting the granting of motion for mistrial.

### III

Appellant's next contention is that the trial court committed error by admitting evidence of his involvement in "additional bad acts" extraneous to the charge brought against him.

The general rule is that evidence of other crimes is inadmissible to prove criminal disposition, but they are admissible to prove motive, opportunity, intent, common design or plan, knowledge or identity. People v. Archerd, 3 Cal. 3d 615, 477, P. 2d 421 (1970). see Fed. R. Evid. 404(b). Further, the probative value of the evidence must outweigh its prejudicial effect and the evidence must logically tend to prove an issue in dispute. People v. Perez, 42 Cal. App. 3d 760, 117 Cal. Rptr. 195 (1974).

Defendant made a statement that he was dealing three to five caps of heroin per day in June of 1976. He also stated that he made a profit of about $500.00 per drug deal. The government contends that these admissions are relevant for various purposes to establish intent and also to establish the motive for the offense charged, and that the defendant's offered stipulation of his drug addiction and familiarity with "the terms of drug transaction" was not "coextensive with all of the things that the statement could be introduced to show." Appellant argues that he offered a stipulation as to his drug activity but that the stipulation was not accepted and evidence was admitted, and that the rejection of the stipulation[2] and admission of the evidence was reversible error.

We agree that admission of the evidence of prior drug usage was erroneous. To go beyond that which was stipulated and to have allowed the prosecution to detail the incidents of defendant's drug-related activities, was highly prejudicial in that it raised issues collateral to the offense charged. As to the appellant's intent and motive, we believe that these issues were sufficiently resolved by the officers' testimony, and unless the defendant (Appellant) had taken the stand and made statements tending to negate motive and intent, the prejudicial effect of the admitted evidence could very likely have outweighed any probative value it may have had. The case of People v. Guzman, 121 Cal. Rptr. 69 (1975) makes clear that the court should search for other alternatives before offering evidence of prior criminal activity, due to the prejudicial nature of such evidence.

The defendant in Guzman was charged with robbery. He offered testimony that he had received a workmen's

190

compensation check to show that he had no need to commit the robbery. The prosecution countered by offering evidence that he was a narcotic addict. The defendant attempted to prevent the admission of the evidence concerning his narcotics addiction by stipulating that the money from the check had been spent prior to the robbery. The stipulation was rejected and the evidence of his addiction was admitted. The court held that it was reversible error not to accept the defendant's offered stipulation, and stated:

> "The Supreme Court had recently had occasion to again point out the extremely prejudicial nature of evidence of prior crimes and the necessity for examining the admissibility of such evidence with extreme care. (People v. Kelley [1967] 66 Cal. 2d 232, 57 Cal. Rptr. 363, 424 P.2d 947; People v. Haston [1968] 69 Cal. 2d 233, 70 Cal. Rptr. 419, 444 P.2d 91.) Evidence of prior crimes should be admitted only when there is a real issue to which such evidence is directed. (People v. Gregg [1968] 266 Cal. App.2d 389, 71 Cal. Rptr. 920; People v. Perez [1974] 42 Cal. App.3d 760, 763-766, 117 Cal. Rptr. 195.)
>
> Every effort should be made to meet the issue in another way or eliminate it entirely. Where it is possible to meet the issue by a stipulation it is error to refuse to do so and thus unnecessarily bring before the jury the evidence of other crimes. (People v. Gonzales [1968] 262 Cal. App.2d 286, 68 Cal. Rptr. 578.) This is particularly true where the other crime involved the use of narcotics. There is a grave danger that, notwithstanding proper instructions as to the limited use of the evidence, the jury will nevertheless view it as affecting the reliability of the witness' testimony. (People v. Davis [1965] 233 Cal. App.2d 156, 43 Cal. Rptr. 357.) . . ." Id. At 74.

Guzman is distinguishable from Appellant's case in that in Guzman the defendant had offered testimony to prove he had no need to commit the robbery, and the prosecution countered with evidence of his narcotic addiction. In the present case, the Appellant offered a stipulation, not testimony, as to his drug activity, and the evidence submitted by the government was offered not to rebut the stipulation but to bolster the government's case.

Notwithstanding this distinction, and despite our disagreement with Appellant's contention that the proffered stipulation would have served the same purpose as the introduction of the Appellant's prior involvement with drug related activity, we feel that in the weighing of probative value vis-a-vis prejudicial effect, the balance must be struck in favor of the Appellant.

191

We can only leave to conjecture how pivotal the admitted evidence was in the jury's deliberation of guilt or innocence, and rather than second-guess what effect it may have had, we find instead that the admission of the evidence at trial against Appellant was prejudicial error.

## IV

Appellant's fourth assignment of error is that evidence offered by the defense for the purpose of impeaching the government's witnesses and of attacking the chain of custody of the evidence against him was improperly excluded at his trial.

The evidence in issue are two reports which the Appellant attempted to introduce into evidence. The trial court denied the admission of both reports.

The first report was a police report by an Officer Figgeroa which contained the Appellant's statements alleging police bias and the motive to bring false charges against him.

We find that the exclusion of this report was not improper. Besides being wholly self-serving, whatever relevancy may have been gleaned from the assertions therein were substantially outweighed by the likelihood of confusing the issues before the jury.

The second report offered into evidence was a laboratory report by a criminalist, Mrs. Ellen Osborne, who had died on June 24, 1977. By the introduction of this report Appellant intended to demonstrate a break in the chain of custody of the substances allegedly seized from him. Appellant also attempted to show that Criminalists Ishizaki and Osborne, although supposedly utilizing the same tests and analyzing the same substances, obtained results which were dramatically at variance with the allowable parameters of accuracy for the apparatus used in the analysis of the substances.

We are persuaded by Appellant's argument that Mrs. Osborne's report should have been admitted to place before the jury the inconsistency of her report with that of the government's witness, Criminalist Ishizaki.

Upon review of Appellant's argument, we conclude that the report was in fact admissible, under both an exception to the hearsay rule, and more importantly, as required by the confrontation and compulsory process clauses of the Sixth Amendment to the United States Constitution. See e.g. United States v. Smith, 521 F.2d 957 (D.C. Cir. 1975).

Mrs. Osborne's report was crucial to Appellant's defense. Inasmuch as it was eligible to qualify as an exception to the hearsay rule and would otherwise have been admissible under the compulsory process clause of the Sixth Amendment to the United States Constitution, the trial court's denial of its

192

admission at trial in behalf of Appellant constituted prejudicial error.

## V

In conclusion, then, we hold that the Appellant's submission of Mrs. Osborne's report into evidence was improperly denied. We further hold that the admission of evidence of Appellant's involvement in drug activity other than that constituting the offense for which he was charged constituted reversible error and accordingly, we REVERSE the judgment of conviction and REMAND for a new trial.

Footnote:

1. viz. People v. Lourdes T. Aguon (Criminal Case No. 230F-77.

2. The Government made no systematic effort in the District Court to explain its long delay.

3. The stipulation was in fact read to the jury by the trial judge at the beginning of trial.