Filed 3/29/13  P. v. Chavez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>IMELDA CHAVEZ,<br><br>    Defendant and Appellant. | F063170<br><br>(Madera Super. Ct. No. MCR037736B)<br><br>**OPINION** |

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Madera County.  Mitchell C. Rigby, Judge.

Jean M. Marinovich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Sean M. McCoy, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P.J., Cornell, J. and Poochigian, J.

## INTRODUCTION

Appellant/defendant Imelda Chavez was charged and convicted of count I, felony possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)); and count II, misdemeanor possession of narcotics paraphernalia (Health & Saf. Code, § 11364, subd. (a)). She was placed on probation.

On appeal, defendant contends the court erroneously admitted evidence of her admission that she previously used methamphetamine, and defense counsel was prejudicially ineffective for failing to request a limiting instruction as to the jury's consideration of her admission. Defendant further argues the court had a sua sponte duty to give the unanimity instruction. We will affirm.

## FACTS

On December 15, 2009, Madera Police Officer Matthew McCombs was dispatched to a residential area to investigate a possible burglary. While investigating that case, the neighbors reported a large amount of suspicious activity and constant foot traffic at a particular residence there. McCombs determined that Agapito Obregon, a probationer, lived in a converted garage behind that particular residence.

Officer McCombs went to Obregon's residence and made contact with him. He entered the property to look for stolen goods. Defendant Imelda Chavez and codefendant Norris were in the front room of the residence.

McCombs testified that he immediately saw a plastic box on the living room's coffee table which contained 3.1 grams of methamphetamine. A smoking pipe was next to the box. A digital scale and a cell phone were also on the table.

Officer McCombs conducted a consent search of Norris and found a plastic bag in her pocket. It contained 0.2 grams of methamphetamine. Norris said the methamphetamine on the coffee table belonged to Obregon. Officer McCombs called for backup assistance.

2.

Officer Jason Gutknecht arrived and spoke to defendant, who said that she shared the residence's single bedroom with Obregon. Defendant said she had been staying there for two months, and she used the bedroom dresser.

Officer Gutknecht testified the dresser contained women's clothing, several broken watches, and purses. A blue purse contained a plastic bag with 0.2 grams of methamphetamine and a glass smoking pipe.

Officer Gutknecht testified that he advised defendant of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. He asked defendant about the blue purse and the drugs. Defendant said the purse belonged to her. Gutknecht asked her if the methamphetamine and pipe belonged to her, and defendant said no. Defendant said she kept old watches in the purse.

The prosecutor asked Officer Gutknecht whether defendant said she used methamphetamine. Defense counsel objected on relevance grounds. The court overruled the objection.

Officer Gutknecht testified that defendant said she used methamphetamine the day prior to the search, and she ingested the drug by using a methamphetamine pipe, similar to the one found in the house.

### DEFENSE EVIDENCE

Defendant testified that Obregon used to be her boyfriend. In July 2009, she began staying at his residence on weekdays because it was just a short walk to her adult school. In August 2009, she stopped attending school, and she ended her relationship with Obregon. Defendant testified she moved out in November 2009 because Obregon had other girlfriends and liked to party. However, she still kept some things at his house, and she would occasionally visit.

Defendant testified that at the time of the search, the only property she kept at Obregon's house was a duffle bag of clothing, a few purses, shoes, and jeans. She admitted that she kept clothing in the bedroom dresser.

3.

Defendant testified that she spoke to Officer McCombs on the day of the search. McCombs might have asked her about the blue purse and its contents. Defendant did not recognize Officer Gutknecht at trial and testified she never spoke with him. Defendant testified that she never told any officer that the methamphetamine and pipe in the purse belonged to her, and she never said that she used methamphetamine.

Defendant admitted that she told an officer that the blue purse belonged to her, and that she kept watches in the purse. Defendant testified that the methamphetamine and pipe found in that purse did not belong to her. Defendant also claimed that she had lost the blue purse at Obregon's house about two months before the search.

On cross-examination, the prosecutor asked defendant if she had used methamphetamine in the past. Defense counsel objected on relevance grounds. The prosecutor replied: "Knowledge, your Honor." The court overruled defense counsel's objection. Defendant answered the question and said she had used methamphetamine in the past, but she had last used the drug in 1997 or 1998.

Also on cross-examination, the prosecutor asked defendant if she had been convicted of possession of methamphetamine in 2004. Defendant answered, "Yes, I was[,]" just before defense counsel objected. The court sustained the objection and instructed the jury to disregard "for all purposes and not to consider in any part of your deliberations the question and answer last posed. The matter is stricken."[1]

## PROCEDURAL HISTORY

Defendant and codefendant Norris were both charged with count I, possession of methamphetamine, and count II, misdemeanor possession of narcotics paraphernalia.

---

[1] The court properly sustained the objection and admonished the jury because a testifying defendant is not subject to impeachment with a prior conviction for simple possession of narcotics since it is not a crime of moral turpitude. (See *People v. Castro* (1985) 38 Cal.3d 301, 317.)

Codefendant Norris pleaded guilty to count I. After a jury trial, defendant was convicted of counts I and II. She was placed on probation.

## DISCUSSION

### I. Evidence of defendant's admissions about prior drug use

Defendant raises several issues as to the court's admission of evidence about her admissions that she used methamphetamine the day before the search. First, defendant contends the court erroneously permitted introduction of this evidence through the testimony of Officer Gutknecht and cross-examination of defendant during trial.

Second, defendant argues that while defense counsel raised relevance objections to this evidence, he was prejudicially ineffective for failing to object to the testimony as inadmissible character evidence pursuant to Evidence Code section 1101.

Finally, defendant argues that defense counsel was ineffective for failing to request an instruction on the limited admissibility of this evidence, and counsel's failure to request the instruction was prejudicial because the prosecutor urged the jury to rely on defendant's admission of prior drug use for the improper purpose of propensity evidence.

#### A. *Possession*

We begin with the limited admissibility of prior drug use in narcotics prosecutions. "The crime of possession of methamphetamine consists of four elements: (1) defendant exercised control over or the right to control an amount of methamphetamine; (2) defendant knew of its presence; (3) defendant *knew of its nature as a controlled substance;* and (4) the substance was in an amount usable for consumption. [Citations.]" (*People v. Tripp* (2007) 151 Cal.App.4th 951, 956 (*Tripp*), italics in original.)

" 'It is well settled, of course, that in a prosecution for unlawful possession of narcotics, it is incumbent upon the prosecution to present evidence from which the trier of the facts reasonably may infer and find that the accused had dominion and control over the contraband with knowledge of its presence and narcotic character.… [Citation.]' It is

5.

also well settled, however, that each of these essential elements may be proved by circumstantial evidence and any reasonable inferences drawn from such evidence. [Citations.]" (*Tripp*, *supra*, 151 Cal.App.4th at p. 956.)

"[K]nowledge by the accused of the character of the contraband is an essential element of possession. [Citations.]" (*People v. Williams* (1971) 5 Cal.3d 211, 215.) Knowledge of a substance's narcotic nature may be shown in a variety of ways, including "by evidence showing a familiarity with the substance, such as needle marks or other physical manifestations of drug use *or instances of prior drug use* [citations]." (*Tripp, supra*, 151 Cal.App.4th at p. 956, italics added.)

"As a general rule, evidence the defendant has committed crimes other than those for which he is on trial is inadmissible to prove bad character, predisposition to criminality, or the defendant's conduct on a specific occasion. [Citation.] However, Evidence Code section 1101, subdivision (b), permits evidence of a defendant's past criminal acts when relevant to prove a material fact at issue, such as identity, motive, or knowledge. [Citations.]" (*People v. Williams* (2009) 170 Cal.App.4th 587, 607.)

In the prosecution of drug crimes, evidence of the defendant's prior drug use is generally admissible under Evidence Code section 1101, subdivision (b), "to prove knowledge of the narcotic nature of the drugs. [Citation.]" (*People v. Williams, supra*, 170 Cal.App.4th at p. 607; *People v. Earley* (2004) 122 Cal.App.4th 542, 546-548; see also *People v. Morales* (1979) 88 Cal.App.3d 259, 264; *People v. Perez* (1974) 42 Cal.App.3d 760, 764.)

For example, in *People v. Thornton* (2000) 85 Cal.App.4th 44, the defendant was charged with possession of heroin. A syringe was found in his car, and heroin was found in the police car into which the defendant was placed after his arrest. *Thornton* held that the defendant's statement to the arresting officer, that he had only used heroin a few times, was admissible to show the defendant's knowledge of the nature of the substance alleged to be in his possession. (*Id*. at pp. 47-48.)

6.

### B. *Admission of defendant's statements about her prior drug use*

As applied to this case, the court did not abuse its discretion when it permitted Officer Gutknecht to testify about defendant's admission that she used methamphetamine the day before the search, which she denied when she testified. In addition, the court did not abuse its discretion when it permitted the prosecution to cross-examine defendant about her prior drug use. Similarly, defense counsel was not ineffective for failing to object to the testimony as inadmissible character evidence under Evidence Code section 1101, subdivision (b) because the evidence was relevant, probative, and admissible.

Defendant admitted that she kept belongings in the bedroom dresser and that the blue purse belonged to her. However, she denied any knowledge of the methamphetamine and pipe found in that purse, claimed she only kept broken watches in that bag, and also claimed that she did not regularly live there anymore. The prosecution had the burden of proving that defendant knew of the nature and character of the contraband found in the blue purse as a controlled substance. Evidence of defendant's previous admission to Officer Gutknecht, that she had used methamphetamine, was highly relevant and probative to the disputed issue of knowledge, and the court did not abuse its discretion when it permitted the prosecution to ask both Officer Gutknecht and defendant about her prior methamphetamine use. Defendant's out-of-court statements to Officer Gutknecht were admissible pursuant to the admission exception to the hearsay rule. (Evid. Code, §§ 1204, 1220.)

### C. *Failure to request a limiting instruction*

Defendant next argues that defense counsel was prejudicially ineffective for failing to request a limiting instruction to the jury, that evidence of her prior methamphetamine use was only relevant to prove knowledge of the nature and character of the substance, and the evidence was not admissible to prove her character or disposition to use narcotics.

"To establish ineffective assistance, defendant bears the burden of showing, first, that counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms. Second, a defendant must establish that, absent counsel's error, it is reasonably probable that the verdict would have been more favorable to him. [Citations.]" (*People v. Hawkins* (1995) 10 Cal.4th 920, 940, overruled on other grounds in *People v. Lasko* (2000) 23 Cal.4th 101, 110 and *People v. Blakeley* (2000) 23 Cal.4th 82, 89.) "If the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal. [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1068-1069.)

"[A]lthough a court should give a limiting instruction on request, it has no sua sponte duty to give one. [Citations.]" (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1051.) CALCRIM No. 375 would have been the appropriate limiting instruction in this case. It instructs the jury that evidence was introduced that defendant committed certain uncharged acts; the jury had to decide whether defendant committed the uncharged offense by a preponderance of the evidence; the jury could, but it was not required to, consider that evidence for the limited purpose of determining identity, intent, motive, knowledge, accident, or common scheme or plan; the jury could not consider the evidence for any other purpose; and the jury could not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.

The court did not have a sua sponte duty to give this instruction, and defense counsel did not request it. Defense counsel was not ineffective for failing to request the limiting instruction in response to the evidentiary portion of the trial. Defense counsel may have had made the tactical decision to decline such an instruction to avoid calling attention to the evidence and instructional language that might have been deemed

8.

unfavorable to the defense – that the jury could consider her admission of prior drug use to prove her knowledge of the nature and character of the substance.

### D. Prejudice/Closing argument

Defendant argues that defense counsel's failure to request a limiting instruction was prejudicial in light of the prosecutor's closing argument, because the prosecutor cited to defendant's admission of her prior drug use and encouraged the jury to improperly use such evidence for the improper purpose of proving her propensity to use drugs.

In his initial closing argument, the prosecutor addressed defendant's admission of her prior drug use in light of the elements of simple possession, particularly the element as to whether the defendant knew of the nature and character of the contraband as a controlled substance.

> "How do we know that? Well, we know that for a couple different reasons. [¶] One, Officer Gutnecht [*sic*] testified that the defendant in fact told him that she smoked methamphetamine. That she did it yesterday. [¶] Even if you have reason to disbelieve that account and believe the defendant's testimony, *she stated that she had smoked methamphetamine in the past. So she certainly knew that it was a controlled substance. That it was a narcotic*." (Italics added.)

The prosecutor's initial closing argument accurately described the limited manner in which the jury could consider defendant's admission of her prior methamphetamine use.

Defense counsel also addressed defendant's admissions of prior drug use in his closing argument, and challenged Officer Gutknecht's credibility on this point. Defense counsel also rejected the prosecutor's attempt to connect defendant's prior drug use to the contraband found in the house:

> "That's like saying, 'I found this pen on the floor. Is this pen yours?'
>
> " 'No.'
> " 'Have you used a pen?'
> " 'I used a pen yesterday.'
> " 'Okay. Well, this pen is yours because you used a pen yesterday.'

9.

"That's the same thing as saying, 'I smoked methamphetamine the day before.' "

Defense counsel further argued that defendant's admissions about prior drug use did not mean that "because she smoked meth the day before that everything now becomes hers."

In the prosecutor's rebuttal argument, he refuted defense counsel's attacks upon the officer's credibility as to what defendant said about her prior drug use. He also addressed defense counsel's attempt to compare prior drug usage with prior usage of a pen.

"And, yeah, she did say that she smoked yesterday to the officer. So that has some importance because now we know that she's a meth smoker, more than likely it's hers. Also, she knows – she knows what methamphetamine is.…"

The prosecutor continued this theme and again cited to defendant's admissions about prior methamphetamine use:

"Did she say the meth was hers? No, she didn't. But you know what, the officers came to her house, they did have a legal search. They found that a meth user did in fact have methamphetamine and a meth pipe used for [smoking] methamphetamine in her pouch in her dresser in her bedroom in her home. And it was a usable amount.

"Use your common sense. Is the other story reasonable? Come on. It was her meth. And it was her pipe. That's all I have."

The prosecutor's argument was not inappropriate, and defense counsel's failure to request a limiting instruction was not prejudicial in light of the trial evidence in this case. The prosecutor argued the officer's testimony about defendant's admissions was credible – that defendant said she lived in the house, she used the bedroom, she kept things in the dresser, and she used methamphetamine the previous day. Defendant claimed she no longer lived in the house, and she had last used methamphetamine in 1997 or 1998. The conflicting evidence presented a credibility question for the jury. The prosecutor argued that based on the officer's testimony, the jury could infer that the

10.

methamphetamine found in the purse belonged to defendant since she admitted that she lived there, kept things in the dresser, and had used methamphetamine the previous day.

## II.      Failure to give the unanimity instruction

Defendant contends the court had a sua sponte to give the unanimity instruction because three different quantities of methamphetamine were found in the house, and the jury had to agree which amount was alleged to belong to defendant to convict her of simple possession. The People argue that the failure to give the unanimity instruction was harmless in this case.

### A.  Background

When the officers searched Obregon's house, they found a plastic box on the coffee table in the living room and a smoking pipe next to the box. The box contained 3.1 grams of methamphetamine. The officers also found a plastic bag in Norris's pocket which contained 0.2 grams of methamphetamine. A blue purse was found in the bedroom dresser, and it contained a plastic bag with 0.2 grams of methamphetamine and a glass smoking pipe.

During closing argument, the prosecutor acknowledged there were three different quantities of methamphetamine found in the house.

> "Now, I'm not necessarily concerned with the meth in Ms. Natalie Norris' pocket. I'm sure that was her own. [¶] But the defendant had the right to possess that which was in her purse. It's likely she also had the right to possess the methamphetamine that was connected to Mr. Obregon which was on the coffee table in her home out in the open, not hidden."

The prosecutor argued that defendant had the right to control both quantities, and she knew the drugs were present in the house since she admitted that she had lived there for two months and used drugs the day before the search.

### B.  Analysis

In a criminal case, a jury verdict must be unanimous, and "the jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.]" (*People v. Russo*

11.

(2001) 25 Cal.4th 1124, 1132, italics in original.) "[W]hen the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.]" (*Ibid*.) "This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' [Citation.]" (*Ibid*.) "On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty. [Citation.]" (*Ibid*.) The trial court has a sua sponte duty to give a unanimity instruction whenever the circumstances of the case make it appropriate. (*People v. Carrera* (1989) 49 Cal.3d 291, 311 fn. 8; *People v. Riel* (2000) 22 Cal.4th 1153, 1199.)

In a prosecution for possession of narcotics, a unanimity instruction is required "where actual or constructive possession is based upon two or more individual units of contraband reasonably distinguishable by a separation in time and/or space and there is evidence as to each unit from which a reasonable jury could find that it was solely possessed by a person or persons other than the defendant ...." (*People v. King* (1991) 231 Cal.App.3d 493, 501 (*King*).) Among the factors to be considered in determining when a unanimity instruction is necessary are whether the defendant raised separate defenses to separate narcotic items and whether there is conflicting evidence over ownership of such items. (See *People v. Castaneda* (1997) 55 Cal.App.4th 1067, 1070-1071 (*Castaneda*).)

For example, the defendant in *King* was convicted of possession for sale where methamphetamine was found in two different locations of the defendant's home: in a purse found in the living room, and inside a decorative statue in the kitchen. (*King, supra,* 231 Cal.App.3d at pp. 497-498.) The evidence showed that the purse was the

12.

property of someone else, the home had multiple occupants, and the defendant's boyfriend testified that some of the drugs belonged to him. (*Id.* at pp. 497-500.) *King* held the unanimity instruction was required because the two units of methamphetamine were in separate parts of the house, and there was evidence that could lead a reasonable jury to believe that it was possessed by another person. (*Id.* at pp. 501-502.)

Similarly, in *Castaneda,* the court concluded that a unanimity instruction was required where the defendant's conviction for possession of heroin could have been based upon either constructive possession of heroin found on defendant's television set, or actual possession of heroin found in his pocket at the sheriff's station. (*Castaneda, supra,* 55 Cal.App.4th at pp. 1070-1071.) *Castaneda* held that the acts of possession were distinct, and the defendant provided separate defenses to each act: the defendant's son testified that the heroin found on the television belonged to him; and defense counsel argued the heroin found in the defendant's pocket was planted or otherwise fabricated. (*Id.* at p. 1071.) *Castaneda* concluded the trial court had a sua sponte duty to give the jury a unanimity instruction on which act or acts constituted the offense of possession. (*Ibid.*)

The instant case is distinguishable from *King* and *Castaneda.* The prosecutor acknowledged that the drugs found in Norris's pocket belonged to her, but did not elect between the drugs found on the coffee table and in the blue purse. Unlike *King* and *Castaneda,* however, the two items containing methamphetamine were not reasonably distinguishable by separation of either time or space. The items were found during the same search, at the same time, and a very short distance apart. In addition, defendant presented the same defense: she did not know anything about the drugs found in the house, and she no longer lived there. Since the two amounts of methamphetamine were not reasonably distinguishable by separation of time or space, and there was no conflicting evidence of ownership or varying defenses offered for the items, the trial court was not required to give a unanimity instruction.

13.

Even if we assume that a unanimity instruction should have been given, the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Gary* (1987) 189 Cal.App.3d 1212, 1218; cf. *People v. Vargas* (2001) 91 Cal.App.4th 506, 562.) Under this standard, the failure to give a unanimity instruction is harmless "[w]here the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and [therefore,] the jury must have believed beyond a reasonable doubt that defendant committed all acts if he committed any,..." (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853.) The failure to give a unanimity instruction is considered harmless "if the record indicate[s] the jury resolved the basic credibility dispute against the defendant and would have convicted the defendant of *any* of the various offenses shown by the evidence to have been committed. [Citations.]" (*People v. Jones* (1990) 51 Cal.3d 294, 307, original italics.)

In this case, defendant testified at trial and denied any knowledge about the methamphetamine found in the house. She denied making the statements attributed to her by Officer Gutknecht – that she was living at the house, sleeping in the bedroom, storing things in the bedroom dresser, or saying that she used methamphetamine the day before search. Instead, she testified that she no longer lived there and did not know anything about the drugs. In addition, the defense attacked the credibility of the officer's testimony about her admissions. Despite this defense, the jury found defendant guilty of possession of methamphetamine. Since both amounts were relatively close together, and defendant raised the same defense, the verdict implies that the jury did not believe defendant's version of events. Thus, since the jury rejected the only defense that defendant offered for the charged offense, the trial court's failure to give the unanimity instruction was harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.