[Crim. No. 18972. First Dist., Div. One. July 27, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
FREDDIE WASHINGTON, Defendant and Appellant.

**COUNSEL**

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney

General, Alvin J. Knudson, Ralph Countryman, W. Eric Collins and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—Defendant Washington's appeal is from a judgment of conviction, based upon a jury's verdict, on a charge of selling heroin in violation of Health and Safety Code section 11352.

He contends: "Because the appellant was willing to stipulate that he knew the narcotic nature of heroin, it was error for the trial court to admit evidence of other narcotics activity."

At the trial's commencement and out of the jury's presence, in order to forestall evidence of her client's previous and unrelated narcotic activity as proof of knowledge of the nature of heroin, Washington's attorney offered this stipulation: "We are willing to stipulate Mr. Washington is familiar with heroin, the way it is packaged and the way it is sold. I'm not prepared to stipulate that Mr. Washington knew the contents of the yellow balloon in the prosecution's case."

Upon the prosecutor's objection the trial court stated: "I'm afraid, counsel, that your position is contrary to that of the Perez case. . . . [U]nless you are willing to stipulate to his knowledge of the substance that's involved in this transaction, Perez tells me that they may introduce evidence to demonstrate it. . . . Unless he's willing to stipulate to the knowledge of this substance, he's able to introduce evidence. I know what your offer is. Unless you are willing to stipulate the way Perez suggests, he [the prosecutor] will be able to produce that evidence." The court then rejected the stipulation.

The "Perez case" of the foregoing discussion is *People* v. *Perez,* 42 Cal.App.3d 760 [117 Cal.Rptr. 195].

The prosecutor was thereafter permitted to produce evidence of Washington's prior conviction for possession of heroin, and testimony of a deputy probation officer who acted in an "investigative capacity" for the court. She had examined Washington's arms and found "scars" and "tracks" and other indications of narcotic usage, but at the time she "had observed that he most likely was not using." He had told her that he had

used "speed," and "coke," and "uppers," and cocaine in the use of which, she said, "You snort it." Her attention was then called "to the left crook of the elbow of the left arm of Mr. Washington here. There appears to be some kind of a mark." Asked if she could draw any "conclusion from observing that mark," she replied, "No, I can't."

It is of course settled law that an essential element of the crime of selling a narcotic is knowledge of its nature as a narcotic. (*People* v. *Winston*, 46 Cal.2d 151, 158 [293 P.2d 40]; *People* v. *Innes*, 16 Cal.App.3d 175, 178 [93 Cal.Rptr. 829].) But it is equally well settled that to "avoid unnecessary prejudice to the accused, such proof may be made by his stipulation, in which event further evidence, such as prior narcotic convictions [or usage], of the necessary knowledge is foreclosed." (*People* v. *Gambos*, 5 Cal.App.3d 187, 194 [84 Cal.Rptr. 908].) "Where it is possible to meet the issue by a stipulation it is error to refuse to do so . . . ." (*People* v. *Guzman*, 47 Cal.App.3d 380, 389 [121 Cal.Rptr. 69].)

To the same effect see *People* v. *Sherren*, 89 Cal.App.3d 752, 755 [152 Cal.Rptr. 828], *People* v. *Eastmon*, 61 Cal.App.3d 646, 655 [132 Cal.Rptr. 510]; *People* v. *Perry*, 271 Cal.App.2d 84, 101 [76 Cal.Rptr. 725]; *People* v. *Gregg*, 266 Cal.App.2d 389, 395 [71 Cal.Rptr. 920]; *People* v. *Irvin*, 264 Cal.App.2d 747, 763 [70 Cal.Rptr. 892]; *People* v. *Gonzales*, 262 Cal.App.2d 286, 290 [68 Cal.Rptr. 578]; *People* v. *Horn*, 187 Cal.App.2d 68, 75 [9 Cal.Rptr. 578] (cert. den., 368 U.S. 846 [7 L.Ed.2d 44, 82 S.Ct. 76]); *People* v. *Freytas*, 157 Cal.App.2d 706, 722 [321 P.2d 782]; *People* v. *Spencer*, 140 Cal.App.2d 97, 105 [294 P.2d 997].

Here the prosecutor and the court relied upon the following language of *People* v. *Perez, supra,* 42 Cal.App.3d 760, 766, and particularly upon paragraph (3) which we have italicized:

"(1) The prosecution must prove every element of its case including the defendant's knowledge of the narcotic character of the substance involved.

"(2) To prove this element, prior or subsequent narcotic activity on the part of the defendant is sometimes admissible.

"(3) *The trial court has the discretion to allow the defendant to admit his knowledge of the narcotic nature of the object involved in the primary prosecution.*

"(4) If the defendant stipulates to such knowledge, it is error to admit evidence of other narcotics activity."

We are of the opinion that *People* v. *Perez* was analyzed incorrectly. The obvious intended meaning of that case was that the defendant may "admit his knowledge of the narcotic nature of the [*type* of] object involved in the primary prosecution." The accused's admission that he somehow had knowledge of the narcotic nature of the *precise object or substance*, the possession or sale of which he has denied, would ordinarily be tantamount to his confession of guilt, a result clearly unintended by the rule we have discussed.

And although there is some support for a holding that the trial court has *discretion* to allow such a stipulation as is here at issue (see *People* v. *Gonzales, supra,* 262 Cal.App.2d 286, 290-291), the great weight of authority holds that in a proper case it is the accused's *right*. Here, in any event, the trial court failed to exercise such discretion, erroneously deeming itself bound by *People* v. *Perez*.

We are not unaware of the rule iterated by *People* v. *Robles,* 2 Cal.3d 205, 213 [85 Cal.Rptr. 166, 466 P.2d 710]; "A prosecutor is not required to stipulate to the existence of any elements of the crime he is attempting to prove where the stipulation will impair the effectiveness of the prosecutor's case and foreclose his options to obtain a conviction under differing theories." But in a case such as that before us the offered stipulation could in no way "impair the [legitimate] effectiveness of the prosecutor's case"; it would instead subject the accused to improper and unnecessary prejudice, the avoidance of which is a prime object of our criminal law. An exception to the *People* v. *Robles* rule will often exist "where the defendant offers to stipulate to an element of the case against him and proof of that element *would involve highly prejudicial evidence, . . .*" (*People* v. *Sherren, supra,* 89 Cal.App.3d 752, 755; italics added.)

We are unable to declare the error we have found to be harmless under the standards of the state's Constitution, article VI, section 13, and *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243] (cert. den., 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70]). The judgment will accordingly be reversed.

We consider another of Washington's contentions of error in respect of an issue which will undoubtedly be pressed by him upon a retrial. He describes the contention in this manner: "The appellant was denied his

right to a speedy trial due to the delay between the time of the filing of the indictment and the time of his arrest."

Washington was indicted by a grand jury, November 24, 1976, and a warrant for his arrest was issued. We recite the ensuing and continuing events as they are described in Washington's appellate briefs:

"Edward Barham of the Oakland Police Department testified that on December 20, 1976, he went to 989 90th Avenue in Oakland to serve a warrant on the appellant . . . . There he contacted the appellant's mother, who told him that the appellant was not then at home. She said that the appellant came in and out at different times . . . . Officer Barham told Mrs. Washington that there was a warrant for '11352 of the Health and Safety Code.' He asked her to tell this to the appellant so arrangements could be made to pick up the appellant. Mrs. Washington said she would inform the appellant . . . . Officer Barham made no further attempt to locate the appellant. He indicated on his records: 'mother made aware of warrant' . . . .

"William Grijalva of the Oakland Police Department testified that on March 21, 1977, he went to 989 90th Avenue in Oakland to serve a warrant on the appellant . . . . There he contacted the appellant's mother. He told her that he was holding a warrant for the appellant's arrest . . . . She said the appellant had not been there for a while and was not living there any more. Officer Grijalva told Mrs. Washington to inform the appellant about the warrant. He did not recall if he told Mrs. Washington what the warrant was for . . . . He drove by the house once or twice a day for a couple of weeks to see if the appellant was in the vicinity, but he did not go to the door of the house . . . .

"The appellant testified that he stayed either at his parents' house or his girlfriend's . . . . He had been employed for the preceding eighteen months as a mechanic's helper at a business located near his parents' house . . . . In late 1976 the appellant's mother informed the appellant that the police came by and indicated they wished to talk to the appellant about a robbery . . . . His mother did not tell him that there was a warrant out for his arrest for sale of heroin . . . . The appellant told his mother to tell the police to see him at work . . . . The appellant was arrested on March 16, 1978, as he was walking down the street . . . . The arresting officer asked the appellant to identify himself. The appellant showed two pieces of identification. The officer ran a warrant check and then arrested the appellant . . . .

"The court found there was prejudice to the appellant because of the delay. But the court denied the motion to dismiss because it felt that the police conduct in trying to locate the appellant in the manner they pursued was reasonable . . . ." (Fn. omitted.)

We shall assume, as argued by Washington, that the 16-month delay between the indictment and his arrest was a *postindictment,* and not a *prearrest,* delay. (But see *Scherling* v. *Superior Court,* 22 Cal.3d 493, 503-507, and fn. 8 [149 Cal.Rptr. 597, 585 P.2d 219].) ■ In such a case the burden rests upon the People to establish that the delay was the result of a valid police purpose. In its determination the trial court will consider all of the facts and circumstances, including the length of the delay, its cause, whether it was purposeful, and prejudice to, and waiver, by the defendant. (*People* v. *Archerd,* 3 Cal.3d 615, 640 [91 Cal.Rptr. 397, 477 P.2d 421].) And the appraisal of the reasonableness of the delay is ordinarily confided to the trial court's discretion. Under all of the facts and circumstances of the case, we are unable to discern an abuse of discretion. The instant contention is accordingly found to be invalid.

The judgment is reversed.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied August 23, 1979, and respondent's petition for a hearing by the Supreme Court was denied September 20, 1979. Clark, J., was of the opinion that the petition should be granted.