[No. B004834. Second Dist., Div. Five. Mar. 12, 1985.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT JAMES PRICE, Defendant and Respondent.

COUNSEL

Robert H. Philibosian and Ira Reiner, District Attorneys, Donald J. Kaplan and Dirk L. Hudson, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Roy Mason and John Hamilton Scott, Deputy Public Defenders, for Defendant and Respondent.

OPINION

FEINERMAN, P. J.—This is a People's appeal (Pen. Code, § 1238, subd. (a)(8)) from an order dismissing a three-count information which charged defendant with acts of sexual misconduct in violation of Penal Code sections 288, subdivision (a), 288a, subdivision (c) and 286, subdivision (c).

Defendant filed a written motion to dismiss in which he claimed that he had been denied his right to a speedy trial in violation of the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution, and that he had been denied due process under the Fourteenth Amendment to the United States Constitution. The written motion focused entirely on the alleged speedy trial violation and cited only authorities relevant to that contention. At the hearing on the motion, defense counsel made certain oral representations relevant to his due process claim. According to the reporter's transcript, at the time the court granted the motion it gave no statement of reasons, although the judge made certain comments during the course of the hearing which we will refer to when relevant. The minute order of the proceedings recites that the motion was granted pursuant to Penal Code section 1385, "reason lack of due process." In his respondent's brief on appeal, defendant continues to assert that both his Sixth Amendment and Fourteenth Amendment rights were violated.

Having reviewed the applicable authorities, we find that defendant has no basis for asserting a denial of his right to a speedy trial under either the Sixth Amendment or article I, section 15 of the California Constitution. We further find that as a matter of law defendant's showing below failed to establish a denial of due process which would support dismissal of the action.

The relevant facts are these: the information charges that the offenses took place sometime between August 2 and August 8, 1982. The alleged victim was defendant's stepdaughter, who was four years old at the time. The child complained to a babysitter, Doris Herrera (Herrera), within three to five days after the incident. Herrera informed the child's mother who contacted police. Defendant was arrested on August 8, 1982. After being held for 72 hours, he was advised that no charges were being filed, but that he was being charged with violation of an existing parole. A parole violation hearing was held, resulting in a one-year state prison sentence. Herrera testified at the parole violation hearing, but there were other grounds for violation unrelated to the instant charges.[1]

The complaint in the present matter was filed May 18, 1983. Defendant was held to answer after a preliminary hearing held on June 24, 1983. The information was filed July 7, 1983. After four continuances, all at defendant's request, the motion to dismiss was filed January 5, 1984, and heard on January 30, 1984. At the hearing, the prosecutor explained that she had delayed filing the complaint because of the immaturity of the victim at the

---

[1]The source of this information is a representation by defense counsel at the hearing on defendant's motion to dismiss.

time of the offenses. When the prosecutor first interviewed her, the child was very fidgety and had a very short attention span. The prosecutor believed that the child would not qualify as a competent witness. The prosecutor decided that she would interview the child again when the child developed a longer attention span and a little more maturity and see if she then remembered what had occurred. The result of that second interview was to proceed with the complaint. The child, then five, did qualify as a witness and testified at the preliminary hearing.

In support of his argument that the delay in prosecuting defendant resulted in a denial of due process, defense counsel made the following representation: "I've just been advised today—I've been trying to check this out—and I've just been advised today by my investigator, Carol Eng—we have been trying to determine if there was a tape recording made of the parole hearing at which some of the same witnesses who testified there testified at the preliminary hearing and will be testifying presumably at the trial, namely, a Doris Herrera, who also testified at the parole hearing and testified at the preliminary hearing. [¶] And we're anxious to obtain copies of that tape recording because that would give us possible grounds for impeachment at the trial. [¶] And apparently those tapes are routinely destroyed within a six-month period after the hearing takes place if there is no request. And, of course, there is no request that they be preserved here because the defendant was under the impression that the charges were not going to be filed. And, indeed, they were not filed for almost a year. [¶] So we have lost forever that tape recording of those hearings, Your Honor."

During the course of the hearing, the judge expressed his disapproval of the prosecutor's decision to wait until the victim "grew up a little bit" because of "the inability of such little people to accurately retain what's happened to them . . ." and further commented upon "a possible deterioration in memory of all kinds of people." The judge made no specific finding and no comments respecting loss of the tape of Herrera's parole hearing testimony.

## RIGHT TO SPEEDY TRIAL

■ Under both the state and federal Constitutions (Cal. Const., art. I, § 15; U.S. Const., Sixth Amend.), the right to a speedy trial attaches upon the commencement of criminal proceedings by the filing of a complaint or indictment, or upon a defendant's prior arrest, if he is then held to answer charges. (*United States* v. *Lovasco* (1977) 431 U.S. 783, 788 [52 L.Ed.2d 752, 758, 97 S.Ct. 2044]; *United States* v. *Marion* (1971) 404 U.S. 307, 320-321 [30 L.Ed.2d 468, 478-479, 92 S.Ct. 455]; *Scherling* v. *Superior Court* (1978) 22 Cal.3d 493, 504 [149 Cal.Rptr. 597, 585 P.2d 219]; *People*

v. *Archerd* (1970) 3 Cal.3d 615, 639 [91 Cal.Rptr. 397, 477 P.2d 421].) "The statute of limitations is usually considered the primary guarantee against bringing overly stale criminal charges. (*United States* v. *Ewell,* 383 U.S. 116, 122.) There is no general right to a prosecution speedier than that laid down by the statute of limitations. One does not become an accused until the filing of a complaint. The provisions of the Sixth Amendment contemplate a pending charge, not the mere possibility of a criminal charge. [Citation.]" (*People* v. *Archerd, supra,* 3 Cal.3d at p. 639.)

Defendant contends, however, that his Sixth Amendment rights attached upon his arrest. Both *United States* v. *Marion, supra,* 404 U.S. 307, 320-321 [30 L.Ed.2d 468, 478-479], and *United States* v. *Lovasco, supra,* 431 U.S. 783, 788 [52 L.Ed.2d 752, 758], establish that an arrest triggers the protection of the Sixth Amendment only if the defendant is thereafter held to answer the charges. We find that an arrestee who is released without charges being filed stands in the same position as one against whom charges are filed and then dismissed.

". . . [T]he Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges. Any undue delay after charges are dismissed, like any delay before charges are filed, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause." (*United States* v. *MacDonald* (1982) 456 U.S. 1, 7 [71 L.Ed.2d 696, 703, 102 S.Ct. 1497], fn. omitted.) "Once charges are dismissed, the speedy trial guarantee is no longer applicable. At that point, the formerly accused is, at most, in the same position as any other subject of a criminal investigation. . . . But with no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending. After the charges against him have been dismissed, 'a citizen suffers no restraints on his liberty and is [no longer] the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer.' [Citation.]" (*United States* v. *MacDonald, supra,* 456 U.S. 1, 8-9 [71 L.Ed.2d 696, 704], fn. omitted, brackets in original.)

In the case at bench, defendant, by his own admission, was advised after 72 hours in custody that no charges were then being filed. Any restraint he suffered thereafter, until the filing of the instant complaint, was as a result of the pending parole violation hearing and subsequent adjudication of that violation. That restraint, as counsel indicated, was not solely attributable to the conduct which formed the basis of the instant charges and is irrelevant to these charges for purposes of triggering the protection of the Sixth Amendment.

## Due Process Contention

■ A denial of due process does not result from the mere *possibility* of prejudice attributable to a delay in prosecution; actual prejudice must be shown. (*United States* v. *Lovasco, supra,* 431 U.S. 783, 789, 790 [52 L.Ed.2d 752, 759]; *United States* v. *Marion, supra,* 404 U.S. 307.) "Possible prejudice is inherent in any delay, however short; it may also weaken the Government's case." (*United States* v. *Marion, supra,* 404 U.S. at p. 322 [30 L.Ed.2d at p. 479].) As the court further stated in *Marion,* where a delay of three years occurred before prosecution commenced, "Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment." (404 U.S. at pp. 325-326 [30 L.Ed.2d at p. 482].)

■ The appropriate time to seek relief from the prejudice resulting from prosecutorial delay is during or after trial when the claimed denial of due process can be appraised in the light of what the trial discloses. (*People* v. *Archerd, supra,* 3 Cal.3d 615, 641.) The possible, or even likely, deterioration of witnesses' memories, apparently relied on by the court below, is at this point in time speculative, and at best a premature consideration. It is insufficient to support the trial court's finding of denial of due process. (*United States* v. *Marion, supra,* 404 U.S. 307, 326 [30 L.Ed.2d 468, 482].)

While we do not foreclose the possibility of defendant's establishing actual prejudice at trial, in light of the error which has already occurred in these proceedings, we deem it advisable to enunciate the appropriate standards for assessing a claim of denial of due process for the guidance of the trial court.

■ The burden of proof for establishing such a claim rests with the defendant. (*People* v. *Archerd, supra,* 3 Cal.3d 615, 640.) Even a showing of some detriment, however, does not necessarily mean that a denial of due process has occurred. "Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution." (*United States* v. *Marion, supra,* 404 U.S. at pp. 324-325 [30 L.Ed.2d at p. 481].) "Thus *Marion* makes clear that proof of prej-

udice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." (*United States* v. *Lovasco, supra,* 431 U.S. 783, 790 [52 L.Ed.2d 752, 759]; *Scherling* v. *Superior Court, supra,* 22 Cal.3d 493, 505.)

██ Defendant here cites as actual prejudice destruction of the tape of the parole violation hearing which might have served as a basis for impeachment of the witness Herrera.[2] Analysis of pertinent case law convinces us that neither alone, nor in context, would destruction of the tape justify dismissal of the prosecution.

Thus, in *Scherling, supra,* the defendant was not charged until March 9, 1976, with burglaries which had been committed in 1966 and 1967.[3] The Supreme Court found that neither the fact that Scherling's memory had faded, nor the fact that a number of defense witnesses had died or were unavailable, constituted prejudice. (22 Cal.3d 493, 505-506.) The court noted that the testimony of the missing witnesses would only have been cumulative.

In *Scherling,* the court merely affirmed a trial court finding that the defendant had not been prejudiced. In *Lovasco, supra,* 431 U.S. 783, the United States Supreme Court went further and reversed an order dismissing an indictment, despite a showing by the defendant that two material witnesses had died during the 18-month delay in filing the indictment.

In *Lovasco* the delay was occasioned by a lengthy investigation designed to identify additional culprits. The Supreme Court strongly affirmed the prosecutor's right to determine when to commence a prosecution, stating: "It requires no extended argument to establish that prosecutors do not deviate from 'fundamental conceptions of justice' when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause. It should be equally obvious that

---

[2]The People here contend that defendant failed to establish that the tape ever existed or that it was destroyed. They made no such argument below. For the purpose of resolving the present appeal, we will assume, based on counsel's representations quoted above and reasonable inferences therefrom (*People* v. *Laudermilk* (1967) 67 Cal.2d 272, 286 [61 Cal.Rptr. 644, 431 P.2d 228]), that a tape once existed but was no longer available at the time of the hearing on the motion to dismiss. This assumption is not binding should the issue become relevant during further proceedings and once again be the focus of litigation.

[3]The defendant in *Scherling* left California in July 1969 and did not return until February 1976.

*prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt.* To impose such a duty 'would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself,' *United States* v. *Ewell, supra,* at 120. From the perspective of potential defendants, requiring prosecutions to commence when probable cause is established is undesirable because it would increase the likelihood of unwarranted charges being filed, and would add to the time during which defendants stand accused but untried." (431 U.S. 783, 790-791 [52 L.Ed.2d 752, 759-760], fns. omitted, italics added.)

". . . [I]nsisting on immediate prosecution once sufficient evidence is developed to obtain a conviction would pressure prosecutors into resolving doubtful cases in favor of early—and possibly unwarranted—prosecutions. The determination of when the evidence available to the prosecution is sufficient to obtain a conviction is seldom clear-cut, and reasonable persons often will reach conflicting conclusions." (*Id.* at p. 793 [52 L.Ed.2d at p. 761].) ". . . [T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment." (*Id.* at p. 790 [52 L.Ed.2d at p. 759].)

In the case before us, the temporary incompetence of the victim, the only percipient witness to the crimes, presented a far more compelling reason for delay than was present in either *Marion, supra,* 404 U.S. 307, or *Lovasco, supra,* 431 U.S. 783. It is equatable with the delay in *Archerd, supra,* 3 Cal.3d 615, where prosecution of multiple murders had to await scientific advancements which enabled the detection of murder by means of insulin injection.

Delay to await the competence of a potential child witness is not significantly different than a delay occasioned by the temporary incompetence of an adult witness, whether due to physical or mental impairment. Were we to hold such delay prejudicial, it would provide incentive to criminals to disable their victims and to pedophiles to seek out the youngest and most vulnerable victims. The constitution does not encourage such results in the name of due process.

The decision made in this case to delay prosecution was a calculated risk for the People. The delay was brief compared to the delays approved in the other cases we have considered (18 months in *Lovasco;* 3 years in *Marion;* 9 years in *Scherling;* 11 years in *Archerd*). Moreover, the defendant had

notice at the time of his arrest, when the charges were fresh, that he was under investigation. There is no suggestion in the present record that the prosecutor did not act in total good faith.

Furthermore, Herrera's testimony is merely cumulative of the fact that the child made a complaint shortly after the commission of the crimes. Her testimony is a link, but not an essential one, in the prosecution's chain of evidence. The evidence is also available through the testimony of the victim's mother. Herrera testified at the preliminary hearing without objection. Her testimony occupied only 2 pages of a 68-page transcript. Cross-examination covered an additional two pages. Her preliminary hearing testimony is available for impeachment purposes, as are other traditional methods of impeachment. We must infer from the limited facts before us that Herrera's testimony at the parole violation hearing was essentially unfavorable to defendant. Defendant does not contend otherwise. Thus, we are not talking about deprivation of a potentially meritorious defense through loss of the parole hearing tape, but merely loss of a cumulative tool for impeachment of a nonpercipient witness.

Given these facts, it would appear that even if defendant could show some detriment at trial,[4] dismissal would be too extreme a remedy. When faced with a situation of this type in a criminal prosecution, trial courts should avoid using a meat ax when a scalpel will do. Dismissal of a prosecution is not called for when a less severe remedy will afford a defendant due process and a fair trial. (See, e.g., *People* v. *Zamora* (1980) 28 Cal.3d 88, 99 [167 Cal.Rptr. 573, 615 P.2d 1361]; *Dell M.* v. *Superior Court* (1977) 70 Cal.App.3d 782, 787-788 [144 Cal.Rptr. 418]; *Kelvin L.* v. *Superior Court* (1976) 62 Cal.App.3d 823, 831 [133 Cal.Rptr. 325].)

In the present case, it would appear that even if defendant could show some detriment attributable to the People, due to loss of the tape,[5] the maximum defendant would be entitled to would be the exclusion of Herrera's testimony. In all likelihood, however, an admonition to the jury that Herrera's testimony at trial was inconsistent with her testimony at an earlier parole violation hearing, would suffice. (See *Kelvin L.* v. *Superior Court, supra,* 62 Cal.App.3d 823, 831.)

---

[4]Any such showing would have to be predicated on the delay between the time of the offenses and the time the complaint was filed. Delay after the filing of the information was at defendant's request. (*United States* v. *Marion, supra,* 404 U.S. 307, 325 [30 L.Ed.2d 468, 481.]) Delay attributable to this appeal is irrelevant for purposes of adjudicating the constitutional issue. (See, e.g., *United States* v. *Lovasco, supra,* 431 U.S. 783.)

[5]In reviewing any evidence on this issue, the trial court would have to balance the delay attributable to the prosecution against the apparent delay by defendant from May 1983 to January 1984 before seeking the tape and the potential relevance of that delay in contributing to its loss.

The judgment (order dismissing the information) is reversed.

Ashby, J., and Eagleson, J., concurred.

A petition for a rehearing was denied March 29, 1985, and respondent's petition for review by the Supreme Court was denied May 23, 1985. Mosk, J., was of the opinion that the petition should be granted.