[No. B003354. Second Dist., Div. Seven. Sept. 17, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
SANDRA DAVIS LAWRENCE, Defendant and Appellant.

COUNSEL

David F. Blaisdell, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, S. Clark Moore, Assistant Attorney General, Gary R. Hahn and Mark Alan Hart, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THOMPSON, J.**—Defendant Sandra Davis Lawrence appeals from a judgment of conviction of the first degree murder (Pen. Code, § 187) of Rubye Williams following a jury trial. The issues raised on appeal are: (1) the failure to instruct the jury to consider evidence of the motive and opportunity for someone other than defendant to commit the murder; (2) the failure to order a diagnostic report pursuant to Penal Code section 1203.03; and (3) the failure to grant defendant's *Hitch* motion (*People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]), to dismiss or to suppress evidence of the ballistic comparisons and the gun due to the loss or destruction of the bullets that were recovered from the crime scene and victim's body. For the reasons discussed below, we shall affirm the judgment.

### FACTS

The following facts were established below. On February 15, 1971, victim, who had been waiting alone for deliveries at her husband's new dental

office, was found dead of multiple gunshot and stab wounds. There was no sign of forced entry, other than a window broken by husband, who discovered her body. Victim's fur coat and purse containing $540 in cash were found at the scene.

Defendant and victim's husband began an affair in about September 1970. After victim learned of the affair and threatened to leave with their children, husband ended the affair in January 1971. Husband attended defendant's birthday party on February 13, 1971, two days before the killing, and again told defendant that their relationship was over.

Defendant knew that her sister, Perow, kept a gun under her mattress in her bedroom; defendant at one time had a key to Perow's house. Around February 25, 1971, Perow, who had heard about victim's killing, called the sheriff to report that the gun had been loaded and fired, but that neither she nor her boyfriend had fired it. A sheriff's officer obtained a search warrant to recover the gun, which contained one live round and five empty casings. Perow told the officer that defendant had said that she took the gun and that the gun was used to kill victim.

In April 1971, sheriff's ballistics experts test-fired Perow's gun and compared the test bullets with the four bullets recovered from the crime scene and victim's body. The two experts agreed that two of the four bullets had been fired from Perow's gun, but that the other two bullets were too distorted for a positive comparison.

After the killing, defendant made other incriminating statements to relatives. She told her brother-in-law that she had killed victim; and she told her sister-in-law that the killing was defendant's birthday present. She also said that victim was stupid for waiting at the office after receiving a telephone call that someone was going to make a delivery.

In March or April 1971, subsequent to being questioned by deputies about the killing, defendant left the state for 11 years, using various aliases. Defendant returned and surrendered in 1982.

Prior to trial in May 1982, the four bullets were discovered to be missing. Defendant made a *Hitch* motion for sanctions, including dismissal, suppression of all ballistic comparisons, and suppression of the gun.

Defendant, who testified in her behalf, denied wanting to marry victim's husband, claiming that it was "no big thing" when he broke off the relationship. Although she did not hate or dislike victim, victim's husband was very unhappy and told defendant that he was thinking of leaving victim.

She explained that she went to Chicago after the killing because she had an industrial accident lawsuit there. Although she knew that she was wanted by the F.B.I. for the killing, she was too embarrassed and upset to return despite her desire to clear her name. She finally surrendered because she had matured.

I

REFUSAL OF PROPOSED JURY INSTRUCTION

■ Defendant contends the court erred in refusing the following jury instruction: "There has been admitted in evidence testimony indicating that someone other than the defendant did or may have had a motive and opportunity to commit the crime in question. That testimony may be considered by you for the purpose of determining whether there is reasonable doubt as to whether the defendant committed the crime."

In *People* v. *Sears* (1970) 2 Cal.3d 180 [84 Cal.Rptr. 711, 465 P.2d 847], the court observed that a defendant, upon a proper request therefor, has a right to an instruction that directs attention to evidence from a consideration of which a reasonable doubt of his or her guilt could be found. (*Id.,* at p. 190.) Defendant argues that there was circumstantial evidence that husband had a motive and opportunity to kill victim, and that defendant had a right to direct the jury's attention to this specific evidence. However, "[s]ince *Sears,* there have been a series of Court of Appeal cases which have rejected a broad interpretation of that decision. [Citations.] ' "None of the cases cited in *Sears* says, and *Sears* itself does not say, that upon request the judge must direct the attention of the jury to specific testimony and tell the jury it may look to that testimony for the purpose of forming a reasonable doubt on an issue." ' [Citation.]" (*People* v. *Kaiser* (1980) 113 Cal.App.3d 754, 766 [170 Cal.Rptr. 62].)

In the instant case, the trial court gave CALJIC No. 2.90, the standard reasonable doubt instruction derived from Penal Code section 1096. Section 1096a of the Penal Code states that when the statutory definition of reasonable doubt is given, no other instruction need be given defining reasonable doubt. The jury was also given the standard instructions on motive (CALJIC No. 2.51) and alibi (CALJIC No. 4.50).

Defendant's rejected instruction, which simply refers in a general fashion to evidence of the motive and opportunity of someone other than defendant to kill victim, is cumulative of instructions that were given on reasonable doubt (CALJIC No. 2.90), motive (CALJIC No. 2.51) and alibi (CALJIC No. 4.50). Where the requested instruction merely restates the presumption

of innocence and does not focus on specific evidence, the court may properly refuse the request. (*People* v. *Pierce* (1979) 24 Cal.3d 199, 211 [155 Cal.Rptr. 657, 595 P.2d 91].)

We are satisfied from a review of the record that the jury was properly and adequately instructed on all the principles and factual issues that were presented, including the essential instruction relating to the issue of reasonable doubt.

II

### REFUSAL TO ORDER A DIAGNOSTIC REPORT

■ Section 1203.03, subdivision (a), provides that the court has the discretion to order a defendant to be temporarily placed in a diagnostic facility prior to sentencing, if "it concludes that a just disposition of the case requires such diagnosis and treatment services . . . ." Placement in a diagnostic facility "is warranted where the court concludes a diagnostic study is essential to a just disposition of the case. The trial court abuses its discretion in ruling on a particular matter only where such ruling exceeds the bounds of reason." (*People* v. *Harris* (1977) 73 Cal.App.3d 76, 85 [140 Cal.Rptr. 697].)

■ Defendant contends that the court abused its discretion in denying her section 1203.03 request because defendant, now 36, has matured and changed from the person she was at 24. Moreover, the crime was one of passion, arising out of a situation not likely to recur. However, this evidence, which was before the court in the form of defendant's own testimony, was properly considered and weighed by the trial court judge, who in denying defendant's motion for a diagnostic study, stated: "The Court feels a diagnostic study is normally done for a just disposition of the case. This Court has listened to the evidence. I took my notes, my personal notes on the matter, and I reviewed it on several occasions. The Court feels the verdict should stand and that the 1203.03 is not going to help the Court or anyone. The Court feels under the law that the defendant should be sent to the state prison."

There is nothing in the record to show that the trial court's ruling exceeded the bounds of reason. There was no abuse of discretion here.

III

### DENIAL OF THE *HITCH* MOTION

■ Defendant contends that the trial court improperly denied her *Hitch* motion to dismiss or to suppress the gun and all ballistics comparisons, as

sanctions for the apparent loss of the four bullets. The question before us is whether defendant, who knew the charges against her and nevertheless fled the jurisdiction of this state for 11 years, can now complain of a due process violation caused by her inability to conduct an independent examination of the lost bullets. We will conclude that she cannot.

Both parties assume in their briefs that the bullets were lost at some unknown time during the 11 years when defendant had fled the jurisdiction of this state. At the time of the crime in 1971, the general procedure used by the sheriff's firearms identification and criminalistics laboratory was to store evidence such as bullets in laboratory evidence locker until they determined which weapon fired the bullets. Then the evidence was either to be returned to the submitting agency—in this case, the sheriff's homicide bureau—or sent to the sheriff's central property custodian for storage. The laboratory's records do not reflect where the instant four bullets went after the last comparison test was made on April 14, 1971. Although an extensive search was conducted when it was discovered prior to trial that the four bullets were missing, they were not found. Respondent speculates that the bullets could have been lost when the sheriff's laboratory moved in 1976.

In *People* v. *Hitch, supra,* 12 Cal.3d 641, 652-653, the Supreme Court held that where material evidence "cannot be disclosed because of its intentional but nonmalicious destruction by the investigative officials, sanctions shall in the future be imposed for such nonpreservation and nondisclosure unless the prosecution can show that the governmental agencies involved have established, enforced and attempted in good faith to adhere to rigorous and systematic procedures designed to preserve" the evidence. In *Hitch,* the Supreme Court ordered the suppression of a breathalyzer test result on the ground that the routine police destruction of the test ampoule prevented an independent examination, thus depriving defendant of due process. The court found that the destroyed ampoule and its contents were material evidence because there was a "reasonable possibility" that an independent examination would have been favorable to the defendant on the issue of guilt or innocence by impeaching the "accuracy and credibility" of the breathalyzer test. (*Id.,* at p. 649.) The court further concluded that if the evidence were available, due process would require its disclosure, and a reversal would have been warranted if the case had gone to trial without disclosure of the evidence. (*Id.,* at pp. 649-650.)

Preliminarily, we note that *Hitch* established a rule prospective in operation of its October 21, 1974 filing date. In the instant case it is unknown when the bullets were lost; they could have been lost either before or after the effective date of *Hitch.* Nevertheless, we shall determine its impact on this case since it was in effect at the time of the trial.

Respondent asserts that *Hitch* and its progeny have been disapproved in *California* v. *Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528], wherein it was "settled that the federal due process clause does not require the collection and retention of breath samples for independent testing when the intoxilyzer is used for blood alcohol analysis of breath." (*People* v. *Mills* (1985) 164 Cal.App.3d 652, 656 [210 Cal.Rptr. 669].) However, *Trombetta* does not dispose of this case, "because it was recognized therein that the problem of developing rules about preservation of evidence has yet to be fully addressed on the *federal* level." (*People* v. *Roehler* (1985) 167 Cal.App.3d 353, 383 [213 Cal.Rptr. 353].)

We now turn to the question of whether the lost bullets constituted material evidence under *Hitch*.[1] While opinion testimony by expert ballistics examiners is admissible, the jury were not bound to accept the opinions as conclusive, but they were to, and did, give the testimony the weight to which they thought it was entitled. Defendant, who availed herself of the opportunity to cross-examine the prosecution's experts during the trial, could have inquired whether an independent examiner might have reached a different conclusion had the bullets been available. Moreover, defendant could have also introduced expert testimony to show that the presence of the bullets would have made a difference in her defense. Defendant's failure to establish a record below resulted in a lack of evidence to show a "reasonable possibility" that the introduction of the bullets would have impeached the reliability and credibility of the test results in this case.

Moreover, our research has disclosed no other reported decision discussing the applicability of sanctions under *Hitch* for the unintentional loss of evidence, much less small bullets, during a lengthy (11-year) period when the defendant was a fugitive from justice. ■■■ While it has been established that "[a] fair trial is no less denied by negligent loss of evidence than it is by nonmalicious destruction" (*People* v. *Swearingen* (1978) 84 Cal.App.3d 570, 574 [148 Cal.Rptr. 755]), it is also an established maxim of jurisprudence that "'No man can take advantage of his own wrong.'" (*People* v. *Seely* (1946) 75 Cal.App.2d 525, 526 [171 P.2d 529].) In particular, where a criminal defendant is a fugitive from justice, he or she loses the right to insist upon a trial within the prescribed period. (*Ibid.; In re Shortridge* (1907) 5 Cal.App. 371, 379 [90 P. 478].) And when a convicted

---

[1]Compare and contrast *People* v. *Tierce* (1985) 165 Cal.App.3d 256, 263 [211 Cal.Rptr. 325], a post-Proposition 8 case applying the recently established federal test defining material evidence as that which "might be expected to play a significant role in the suspect's defense [fn. omitted]" (*California* v. *Trombetta, supra,* 467 U.S. 479, 488 [81 L.Ed.2d 413, 422]), and which "must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (*Ibid.*)

defendant escapes from custody during the pendency of his or her appeal, the appeal shall be dismissed unless the defendant returns to custody within a specified time. (*People* v. *Elkins* (1898) 122 Cal. 654, 655 [55 P. 599]; *People* v. *Redinger* (1880) 55 Cal. 290, 298.) We conclude that because defendant is solely to blame for the long delay in her trial, the application of sanctions would be inappropriate and a miscarriage of justice.

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.