[No. A033425. First Dist., Div. Four. Sept. 29, 1986.]

THE PEOPLE, Plaintiff and Appellant, v.
ARTHUR ROHITH ABRAHAM, Defendant and Respondent.

1222

COUNSEL

John K. Van de Kamp, Attorney General, Eugene W. Kaster and John W. Runde, Deputy Attorneys General, for Plaintiff and Appellant.

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, Michael Pascetta and Theresa B. Doyle, Deputy State Public Defenders, for Defendant and Respondent.

OPINION

SABRAW, J.—The People appeal from an order dismissing several refiled charges against respondent Arthur Rohith Abraham on the ground that trial thereof would violate respondent's due process right to a speedy trial. The question presented is whether criminal charges that have been dismissed due to the victim's reluctance to proceed can be reinstituted after the victim is murdered by the accused. We answer this question in the affirmative and therefore reverse the order of dismissal.

### BACKGROUND AND PROCEDURE

All of the charges filed against respondent pertain to Mary G., who was the victim and the complaining witness on the refiled charges. At a preliminary examination conducted on these latter charges in August of 1984, Ms. G. testified as follows: She and respondent had lived together since 1977. They produced a son, N. Ms. G. left respondent in May of 1984, taking N. with her. Shortly thereafter respondent was awarded legal custody of N. On July 15th of that year Ms. G. went to respondent's apartment to retrieve some belongings and visit N. Once she was inside the apartment respondent produced a revolver, pointed it at her face, and told her that "he meant business." Respondent also stated that "he hadn't made love to a woman for over two months and he wanted to make love to me like he had never made love to me before." They went to a bedroom, where respondent tied up Ms. G. with rope. According to Ms. G., respondent "did oral on me . . . went down on me." "After that was over he got on top of me and put his penis inside my vagina, . . . and then he got on his knees and put his penis inside my mouth and . . . ejaculated inside my mouth."

As a result of this incident respondent was charged with forcible rape (Pen. Code, § 261, subd. (2)),[1] felony false imprisonment (§§ 236, 237),

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

and two counts of forcible oral copulation (§ 288a, subd. (c)), all of which involved his personal use of a firearm. (§§ 1203.06, 12022.3, 12022.5.) Ms. G. was subsequently awarded exclusive legal custody of N. Sometime in September of 1984 Ms. G. advised the district attorney that she had reconciled with respondent and did not wish to proceed with prosecution of the charges. On September 26th the trial court granted the district attorney's motion to dismiss the charges against respondent for lack of prosecution.

The following events occurred in 1985: Mary G. was killed on March 29th. She was pregnant at the time of her death. In June the district attorney filed complaints which included all of the recently dismissed charges plus charges of murder (§ 187) and causing a miscarriage (§ 274). As with the original charges, both of the new charges included allegations that respondent had personally used a firearm during the commission of the offense. (§§ 1203.06, subd. (a)(1)(i), 12022.5.)

A second preliminary examination was conducted on August 5th. After hearing testimony from the deputy district attorney who had been responsible for the prosecution and dismissal of the original charges, and after taking judicial notice of a transcript of the first preliminary examination, the magistrate ordered respondent held to answer on the original charges. The magistrate denied a motion by respondent to dismiss these charges for delay amounting to a denial of respondent's right to a speedy trial.

On September 13th respondent noticed a "Motion to Dismiss For Lack of Speedy Trial." On October 10th the trial court conducted a hearing on the motion and granted it by minute order. This timely appeal followed.[2]

REVIEW

The parties are in general agreement that the relevant timeframe is the period between dismissal of the original charges and their refiling nine months later. This period is not governed by constitutional guarantees of a speedy trial (U.S. Const., Amend. VI; Cal. Const., art. I, § 15) or by statutes providing for prompt adjudication of criminal charges. (See §§ 686, subd. 1, 1382.) Whether this delay commanded dismissal is instead to be measured by the far reaching but less specific requirements of due process.

---

[2]The minute order is appealable. (§ 1238, subd. (a)(8); see *People v. Harris* (1985) 165 Cal.App.3d 1246, 1253-1254, fn. 6 [212 Cal.Rptr. 216].)

Respondent was subsequently tried and convicted of second degree murder and causing a miscarriage. The jury found both of the firearm use allegations to be true. It further found that respondent was insane at the time the crimes were committed. Respondent was sentenced to serve a term of 17 years to life in Atascadero State Hospital.

(*United States* v. *MacDonald* (1982) 456 U.S. 1, 7-8 [71 L.Ed.2d 696, 703, 102 S.Ct. 1497]; *United States* v. *Marion* (1971) 404 U.S. 307, 313, 320-324 [30 L.Ed.2d 468, 474, 478-481, 92 S.Ct. 455]; *Scherling* v. *Superior Court* (1978) 22 Cal.3d 493, 504-505 [149 Cal.Rptr. 597, 585 P.2d 219]; *People* v. *Bradford* (1976) 17 Cal.3d 8, 18 [130 Cal.Rptr. 129, 549 P.2d 1225]; *People* v. *Price* (1985) 165 Cal.App.3d 536, 540-541 [211 Cal.Rptr. 642]; see *United States* v. *Lovasco* (1977) 431 U.S. 783 [52 L.Ed.2d 752, 97 S.Ct. 2044]; *People* v. *Archerd* (1970) 3 Cal.3d 615 [91 Cal.Rptr. 397, 477 P.2d 421].)

Before proceeding to a consideration of the merits, we first address a claim by the Attorney General that the trial court's dismissal was somehow defective because respondent's motion "should not have been entertained before trial." This claim is based upon *People* v. *Price, supra,* 165 Cal.App.3d 536, wherein the court, in a virtually identical context, stated: "The appropriate time to seek relief from the prejudice resulting from prosecutorial delay is *during or after* trial when the claimed denial of due process can be appraised in the light of what the trial discloses. (*People* v. *Archerd, supra,* 3 Cal.3d 615, 641.) The possible, or even likely, deterioration of witnesses' memories, apparently relied on by the court below, is at this point in time speculative and at best a premature consideration. It is insufficient to support the trial court's finding of denial of due process. (*United States* v. *Marion, supra,* 404 U.S. 307, 326 . . .)" (*Id.,* at p. 542 [italics added].) We cannot treat these comments as controlling.

■ The court in *Archerd* stated: "It is proper for the trial court to wait to appraise the reasonableness of the delay in light of what would be disclosed at and after the trial, which places him in an excellent position to rule on a renewed motion. [Citation.] That is what the court did here . . . . it reserved its ruling until the end of the trial." (*People* v. *Archerd, supra,* 3 Cal.3d 615 at p. 641.) We read this as approval for a trial court deferring its ruling until completion of trial. But it is not authority for the propositions that dismissal may not be sought before trial or that a ruling must be held in abeyance until that time. The *Price* court's construction of *Archerd* is also defective insofar as it failed to take account of the Supreme Court's subsequent statement "the right to speedy trial is one which *must* be asserted prior to the actual commencement of trial, usually by means of a motion to dismiss." (*Morse* v. *Municipal Court* (1974) 13 Cal.3d 149, 156 [118 Cal.Rptr. 14, 529 P.2d 46] [italics added]; accord *In re Yurko* (1974) 10 Cal.3d 857, 866 [112 Cal.Rptr. 513, 519 P.2d 561] ["claim of denial of a speedy trial . . . must be made by pretrial motion"]; *People* v. *Wilson* (1963) 60 Cal.2d 139, 146 [32 Cal.Rptr. 44, 383 P.2d 452] ["The right to a speedy trial must therefore be asserted . . . prior to the commencement of trial"].) The *Price* court's reading of *Marion* is correct, although we take *Marion* to

state a rule of federal appellate practice (see *United States* v. *Lovasco, supra,* 431 U.S. 783 at pp. 788-789, fn. 7 [52 L.Ed.2d at p. 758]; cf. *Luce* v. *United States* (1984) 469 U.S. 38, 41-42 [83 L.Ed.2d 443, 447-448, 105 S.Ct. 460]) which cannot override our Supreme Court's explicit approval of litigating speedy trial claims by pretrial motion.

*Price* is also factually distinguishable. The purported ground for dismissal there was the "deterioration of witnesses' memories." Here, the memory of the sole percipient witness other than respondent was not merely subject to hypothetical "deterioration," but was instead obliterated by her murder. This was fully demonstrable on a pretrial motion, thereby obviating any benefit from deferring a ruling until completion of trial. Not only was the issue ripe for decision, the ruling eventually made spared all concerned the necessity of a potentially futile trial. The trial court was fully justified in ruling on the pretrial motion made by respondent.

For each and both of these reasons *Price* will not be followed, and we conclude that the merits of the issue are now properly before us. It is to those merits that we now turn.

■ This court in *People* v. *Lawson* (1979) 94 Cal.App.3d 194, 198 [156 Cal.Rptr. 226], stated that delay occurring before the filing of an information will not be presumed prejudicial and that a due process claim was to be examined according to this analysis: "First, the defendant must show that he has been prejudiced by the delay. Second, the burden then shifts to the prosecution to justify the delay. Third, the court balances the harm against the justification." (Accord *People* v. *Hartman* (1985) 170 Cal.App.3d 572, 579 [216 Cal.Rptr. 641]; *People* v. *Reeder* (1984) 152 Cal.App.3d 900, 909-910 [200 Cal.Rptr. 479].)

The first factor, prejudice, is a question of fact to be determined by the trial court. (*People* v. *Hill* (1984) 37 Cal.3d 491, 499 [209 Cal.Rptr. 323, 691 P.2d 989]; *People* v. *Cave* (1978) 81 Cal.App.3d 957, 965 [147 Cal.Rptr. 371].) With respect to the second factor, "the appraisal of the reasonableness of the delay is ordinarily confided to the trial court's discretion." (*People* v. *Washington* (1979) 95 Cal.App.3d 488, 494 [157 Cal.Rptr. 58]; see *People* v. *Johnson* (1980) 26 Cal.3d 557, 570 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; *Eshagian* v. *Municipal Court* (1985) 168 Cal.App.3d 1070, 1079 [214 Cal.Rptr. 712]; *Hollis* v. *Superior Court* (1985) 165 Cal.App.3d 642, 645 [211 Cal.Rptr. 649].) The third step involves the application of law to facts. As is the case in questions of the constitutional reasonableness of a search (cf. *People* v. *Leyba* (1981) 29 Cal.3d 591, 597 [174 Cal.Rptr. 867, 629 P.2d 961]), this ultimate conclusion partakes of an issue of law on which this court exercises its independent judgment. (Cf.

*People* v. *Newsome* (1982) 136 Cal.App.3d 992, 1002 [186 Cal.Rptr. 676].)
We thus examine the trial court's ruling to determine whether it is either
erroneous as a matter of law (see *Scherling* v. *Superior Court, supra,* 22
Cal.3d 493 at p. 506) or an abuse of discretion. (See *Owens* v. *Superior
Court* (1980) 28 Cal.3d 238, 253 [168 Cal.Rptr. 466, 617 P.2d 1098];
*People* v. *Washington, supra,* 95 Cal.App.3d 488 at p. 494.)

Respondent's argument to the trial court concerning the prejudice flowing
from Ms. G.'s death in the event of a trial was threefold: (1) she was "no
longer available to come to court and say to the prosecutor, 'I do not wish
to proceed.'"; (2) she could not be examined about her reasons for wishing
to have the charges dropped and whether her request to the district attorney
was in some fashion connected to her desire to obtain custody of N., and;
(3) the jury would not be able to evaluate her demeanor. The trial court's
ruling implicitly includes a finding that respondent had demonstrated prej-
udice. As previously mentioned, this is a question of fact. Ordinarily we
would limit our review of it to whether it was supported by substantial
evidence. (See *People* v. *Hill, supra,* 37 Cal.3d 491 at p. 499; *People* v.
*Mitchell* (1972) 8 Cal.3d 164, 167 [104 Cal.Rptr. 348, 501 P.2d 916].)
However, the only fact relevant is Ms. G.'s death, a matter that is not
disputed. However, the nature of respondent's arguments necessarily rest
upon speculation regarding matters not subject to empirical verification. In
these circumstances the issue was ripe for adjudication.

■ Respondent's showing of prejudice is hardly formidable. The de-
cision to initiate and proceed with prosecution of the charges was not Ms.
G.'s to make. That power rests exclusively with the district attorney (Gov.
Code, § 26500), who was under no obligation to follow her wishes. Re-
spondent's second claim of prejudice involves matters that did arise at the
first preliminary examination.[3] As shown from the second preliminary ex-
amination, the deputy district attorney with whom Ms. G. spoke and who
subsequently moved for dismissal was available to testify concerning Ms.
G.'s uncertainty about the prosecution and her expressed reasons for wishing
to have it discontinued. His testimony would not be a perfect substitute for
that of Ms. G., but there would not be an evidentiary void. Still, Ms. G.'s

---

[3]Nine pages of the preliminary examination transcript are devoted to direct examination
of Ms. G.; respondent's cross-examination takes up 40 pages. Respondent elicited Ms. G.'s
admission that she had told respondent at the time he obtained custody of N. that "he was
going to be sorry" and that after she reported the crimes to police she and respondent went
to court and filed "the document" to give her custody. She also conceded having told
respondent's brother that she had "mixed feelings" about respondent going to prison because
it might affect N.

absence is clearly prejudicial. (*Barker* v. *Wingo* (1972) 407 U.S. 514, 532 [33 L.Ed.2d 101, 118, 92 S.Ct. 2182]; *People* v. *Archerd, supra,* 3 Cal.3d 615 at p. 640.) It is true that her demeanor could not be observed by a jury, but this cuts two ways. If respondent cannot cross-examine Ms. G., the prosecution cannot base the heart of its case-in-chief on her live testimony: it will instead be compelled to rely on the dry transcript of the first preliminary examination. By contrast, respondent may bolster his defense by allowing his demeanor to be evaluated should he elect to testify. Respondent's showing is far from overwhelming but it suffices to support the trial court's apparent determination that he would be prejudiced should he be tried on the refiled charges. (*People* v. *Hill, supra,* 37 Cal.3d 491 at p. 499.)

With regard to the factor of justification, respondent places great reliance on the fact that no investigation was undertaken on the charges once they were dismissed. We do not. Public authorities vested with the responsibility for investigating and prosecuting crime are too heavily burdened to allow themselves the luxury of devoting limited time and resources to following up on charges which have been dismissed at the instigation of the victim. Police and prosecutors must chase criminals, not phantoms. The decision to seek dismissal, and the reasons therefor, were eminently sound and reasonable. (See ABA Project on Standards for Criminal Justice, Stds. Relating to The Prosecution Function (Approved Draft 1971) § 3.9, cited in *United States* v. *Lovasco, supra,* 431 U.S. 783 at p. 794, fn. 15 [52 L.Ed.2d 752 at p. 762].) Although the charges were refiled approximately 11 months after commission of the crimes and nine months after the dismissal, refiling occurred less than three months after Ms. G. was killed. Only the last period has constitutional significance. (See *United States* v. *MacDonald, supra,* 456 U.S. 1 at pp. 9-10 [71 L.Ed.2d at pp. 704-705].) This was a reasonable period within which to recommence the prosecution.

When prejudice is balanced against justification, the scale decisively tips against respondent. The fundamental and ineluctable fact is that the refiling of the charges, and all of the problems engendered thereby, are directly traceable to respondent. The question of an accused killing a witness-victim and then claiming that this in effect aborts a prosecution by virtue of due process speedy trial considerations appears to be one of first impression. Fortunately, the novelty of this question is not proportionate to the difficulty of its solution.

██ It is a familiar practice to consider an accused's own acts when ruling on a claim that a speedy trial is denied. (See *People* v. *Johnson, supra,* 26 Cal.3d 557 at p. 570; *Eshagian* v. *Municipal Court, supra,* 168 Cal.App.3d 1070 at p. 1079; *People* v. *Almarez* (1985) 168 Cal.App.3d 262, 265-266 [214 Cal.Rptr. 105]; *People* v. *Bryant* (1970) 5 Cal.App.3d

563, 571 [85 Cal.Rptr. 388].) Here, matters were quiescent until respondent murdered Ms. G. This undoubtedly prompted a reappraisal by the district attorney of the chances and desirability of successfully prosecuting on the original charges in the absence of the victim.

It ill behooves respondent to complain that Ms. G. will be unable to present live testimony to a jury. Respondent is the sole cause of this state of affairs. More than a century ago the United States Supreme Court stated: "The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege. If, therefore, when absent by his own procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated . . . . The rule has its foundation in the maxim that no one shall be permitted to take advantage of his own wrong." (*Reynolds* v. *United States* (1878) 98 U.S. 145, 158-159 [25 L.Ed. 244, 247-248]; accord *Diaz* v. *United States* (1912) 223 U.S. 442, 452 [56 L.Ed. 500, 504, 32 S.Ct. 250]; *Rice* v. *Marshall* (6th Cir. 1983) 709 F.2d 1100, 1102-1103.) California also follows this "established maxim of jurisprudence." (See *People* v. *Lawrence* (1985) 172 Cal.App.3d 1069, 1077 [218 Cal.Rptr. 345].) Respondent's murder of Ms. G. will oblige the prosecution to rely on her former testimony at the first preliminary examination. This is not only permitted by statute (see Evid. Code, §§ 240, subd. (a)(3), 1291), but will also comport with constitutional requirements of due process. (*Ohio* v. *Roberts* (1980) 448 U.S. 56, 62-77 [65 L.Ed.2d 597, 605-615, 100 S.Ct. 2531]; *Mancusi* v. *Stubbs* (1972) 408 U.S. 204, 213-216 [33 L.Ed.2d 293, 301-303, 92 S.Ct. 2308].)

 While not upsetting the trial court's finding of prejudice to respondent, we conclude that any delay in reinstating the charges was not "deliberate delay by the prosecution in order to hamper the defense" (*Scherling* v. *Superior Court, supra,* 22 Cal.3d 493 at p. 507) but was attributable to reasonable law enforcement operations. (See *Jones* v. *Superior Court* (1970) 3 Cal.3d 734, 740 [91 Cal.Rptr. 578, 478 P.2d 10]; *People* v. *Hartman, supra,* 170 Cal.App.3d 572 at p. 581.) Because that delay was directly caused by respondent's wrongful act, justification and good cause was demonstrated by the prosecution. (See *People* v. *Johnson, supra,* 26 Cal.3d 557 at p. 570; *People* v. *Bryant, supra,* 5 Cal.App.3d 563 at p. 571.) We further conclude that, as a matter of law, the harm to respondent resulting

from his wrongful act is outweighed by the justification. (See *People* v. *Lawson, supra,* 94 Cal.App.3d 194 at p. 198.) Our final conclusion is that in these peculiar circumstances the trial court abused its discretion in granting respondent's motion to dismiss the charges refiled against him.

The order of dismissal is reversed.

Channell, J. concurred.

**POCHÉ, Acting P. J.**—I concur in the result reached by the lead opinion but write separately because my path to that result is much different.

The lead opinion sets forth the traditional three-step analysis used to determine whether a defendant's rights have been violated by prefiling delay: first, the defendant must show that he has been prejudiced by the delay; second, the burden then shifts to the prosecution to justify the delay; and third, the trial court must balance the harm against the justification. Next my colleagues find that there is substantial evidence to support findings on steps one and two, but in an exercise of independent judgment reverse the trial court for its conclusion that the harm to the prosecution is outweighed by the justification. In other words the trial court is sustained on the first two steps but reversed on the third.

I am reluctant to reverse the trial court for an improper exercise of discretion when there is no indication whatsoever in the record that the trial court ever got to that point—i.e., step three—where it would be called upon to exercise discretion. All we know about the trial court's thought process is that after hearing argument it granted the motion to dismiss. The single word "granted" is the complete product that we are reviewing.

There is no doubt however that at least the trial court found that defendant had been prejudiced by the delay (step one). What we do not know is whether the trial court found that the prosecution met its burden of showing justification for that delay (step two). If the trial court found insufficient justification *proved* by the prosecution, the motion would be granted without any exercise of discretion by the trial court or what step three refers to as *balancing*. Put bluntly: because we do not know that the trial court arrived at step three it is grossly unfair to reverse for an abuse of discretion occurring at that point.

Because of this difficulty it would be far better if trial courts, when ruling on such motions, would indicate at the very least whether they are proceeding from step one to step two and then to step three. This is particularly necessary

because the role of the reviewing court changes depending on the step involved. When step three is reached the appellate court switches from searching for substantial evidence to support a trial court's determinations (re: steps one and two) to exercising its independent judgment in balancing the *proved* prejudice against the *proved* justification. Unless the trial court makes a record at least to this minimal extent, the opportunity for intelligent review is proportionately diminished if not eliminated.

Since there is no doubt that here the trial court found at a minimum that defendant proved he was prejudiced *by the delay,* my task is to review that finding. What defendant proved was that as a result of Ms. G.'s death she could no longer testify. That may or may not work to the disadvantage of defendant at trial but it is by no stretch of the imagination a *result* of the delay in charging defendant. Any procedural disadvantage stems not from the delay but from her death—a death caused by defendant. Thus defendant did not prove that which he was required to prove in step one, that he has been prejudiced *by the delay.* At most he established the possibility that he *might be prejudiced* by his victim's death, a death that was caused neither by the prosecution nor by the prosecution's delay. At most defendant has proved a temporal sequence: the death of the witness occurred after a delay in charging him with the crimes against her. That is insufficient. It always has been: after this therefore because of this is a fallacy so old it has a Latin name: *post hoc, ergo propter hoc.*

On the basis of what he has proved—that a witness will be unable to testify at trial because she died at his hand—defendant is not in a significantly different position than the mythical defendant who kills his parents and then seeks a lesser sentence because he is an orphan.

For these reasons I concur in the judgment of reversal.

Respondent's petition for review by the Supreme Court was denied January 28, 1987.